812 A.2d 539

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jerome MARSHALL, Appellant.

Supreme Court of Pennsylvania.

Submitted Nov. 9, 1999.

Decided Dec. 18, 2002.

James S. Bruno, Philadelphia, for Jerome Marshall.

Catherine Marshall, Philadelphia, for Commonwealth.

Robert A. Graci, Harrisburg, for Office of Attorney General.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice NIGRO.

In this capital case, Appellant Jerome Marshall appeals from the order of the Court of Common Pleas of Philadelphia County (PCRA Court) dismissing his petition brought pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, without a hearing. For the reasons that follow, we affirm.

On August 29, 1984, Appellant was convicted by a jury of the first-degree murders of Sharon Saunders (a/k/a Sharon Ballard), Myndi McKoy and Karima Saunders. Following a penalty hearing, the jury returned verdicts of death against Appellant in connection with the murders of Myndi McKoy

and Karima Saunders and a verdict of life imprisonment in connection with the murder of Sharon Saunders. On direct appeal, this Court affirmed the judgments of sentence imposed for the murders of Myndi McKoy and Sharon Saunders. *Commonwealth v. Marshall,* 523 Pa. 556, 568 A.2d 590 (1989). However, the Court vacated the sentence of death imposed for the murder of Karima Saunders and remanded the matter to the Court of Common Pleas for a new penalty hearing. *Id.* at 575, 568 A.2d at 599. On remand, a jury was impaneled for the sole purpose of fixing Appellant's sentence for the first-degree murder of Karima Saunders. Following a penalty hearing, the jury returned a verdict of death, and Appellant filed a direct appeal to this Court. Upon review, this Court affirmed the sentence of death. *Commonwealth v. Marshall,* 537 Pa. 336, 643 A.2d 1070 (1994).

On November 16, 1996, Appellant filed a *pro se* petition pursuant to the PCRA.[1] Counsel was subsequently appointed to represent Appellant and an amended PCRA petition was filed on Appellant's behalf on August 1, 1997. On October 24, 1997, Appellant filed a supplemental petition raising additional claims for PCRA relief. The Commonwealth filed responses on January 12, 1998. On February 4, 1998, the PCRA court sent Appellant notice of its intention to dismiss his petition without a hearing. Appellant filed a response to the notice of intention to dismiss on February 23, 1998, and the Commonwealth replied to Appellant's response on March 10, 1998. The PCRA court thereafter dismissed Appellant's PCRA peti-

1. Section 9545(b)(1) of the PCRA provides that PCRA petitions must be filed within one year of the date that the petitioner's judgment became final, unless the petition meets one of three enumerated exceptions to the one year filing requirement. 42 Pa.C.S. § 9545(b)(1). Although Appellant's PCRA petition was not filed within one year of the date that his judgment of sentence became final, and although his petition failed to meet any of the exceptions to the PCRA's timeliness requirements, it was nevertheless filed in a timely manner, because it was filed within one year of the effective date of the 1995 amendments which incorporated the timeliness requirements into Section 9545 of the PCRA. *See* Section 3(1) of Act 1995 (Spec.Sess. No. 1), Nov 17, P.L. 1118, No. 32 (providing that a petitioner whose judgment became final prior to the effective date of the 1995 amendments to the PCRA has one year following the effective date of the amendments to file his first PCRA petition).

tion by order dated March 13, 1998. Appellant's instant appeal followed.

■ On appeal to this Court, Appellant raises more than twenty claims for relief. The relaxed waiver rule which this Court applies to direct appeals in death penalty cases does not apply to subsequent capital appeals brought pursuant to the PCRA. *Commonwealth v. Albrecht,* 554 Pa. 31, 44, 720 A.2d 693, 700 (1998). Thus, in order to establish his eligibility for relief under the PCRA, Appellant must prove by a preponderance of the evidence that his allegations of error have not been waived. 42 Pa.C.S. § 9543(a)(3). An issue raised in a PCRA petition is deemed waived if the petitioner could have raised the issue but failed to do so before trial, at trial, on direct appeal or in a prior state postconviction proceeding. 42 Pa.C.S. § 9544(b).

■ Here, Appellant raises numerous claims of error that he failed to raise in his direct appeals to this Court. Specifically, Appellant contends that: (1) The Commonwealth used its Peremptory strikes to discriminate against women, African–Americans and persons of Jewish ancestry; (2) The trial court improperly excluded prospective jurors in violation of Appellant's rights to an impartial jury and fair trial; (3) The prosecutor committed misconduct by introducing improper evidence at the guilt phase and making improper closing arguments in violation of Appellant's right to a fair trial; (4) Appellant's rights were violated at the guilt phase of his trial and both penalty phase proceedings when the trial court gave a reasonable doubt instruction to the jury; (5) Appellant's rights were violated by the trial court's erroneous lessening of the burden of proof on the element of corpus delicti; (6) The trial court's instructions after the jury reported a deadlock impermissibly suggested the verdict favored by the court and coerced the jury to return a death verdict with respect to the counts on which they were deadlocked; (7) Appellant is entitled to relief from his death sentence because the penalty phase jury instructions and verdict sheet unconstitutionally indicated that the jury had to unanimously find any mitigating

circumstance before it could give effect to that circumstance in its sentencing decision; (8) Appellant was sentenced to death on the basis of an aggravating factor—the witness elimination aggravating factor—that violated due process and the ex post facto clause and failed to channel the sentencer's discretion; (9) Appellant is entitled to relief from his death sentences because of the prosecutor's improper closing argument at the initial penalty phase hearing; (10) The trial court deprived Appellant of a fair and reliable capital sentencing proceeding when it instructed the jury at both penalty trials that it could not consider sympathy in reaching its verdict; (11) Appellant's death sentence must be vacated because the sentencing jury was never instructed that, if sentenced to life, Appellant would be statutorily ineligible for parole; (12) Appellant's death sentence must be vacated because one of the jurors failed to inform the court during voir dire that she had been the victim of crimes of violence and had close relatives who were convicted of murder; (13) The admission of extensive and inflammatory evidence regarding the murders of the two women at the penalty phase retrial, and the prosecutor's repeated references to the details of those murders, deprived Appellant of a fair sentencing proceeding; (14) Appellant is entitled to relief from his death sentence because of the prosecutor's improper closing argument at the penalty phase retrial; (15) The trial court's conduct towards the jury at the second penalty hearing amounted to a directed verdict in favor of the Commonwealth and constituted impermissible comment on Appellant's decision not to testify. Appellant could have raised the foregoing claims in his direct appeals to this Court but failed to do so. Accordingly, they are waived for purposes of the PCRA.[2]

---

**2.** At the end of his argument relating to several of these waived claims, Appellant tacks on a bald and conclusory allegation that prior counsel were ineffective for failing to raise and/or properly litigate the underlying claims of error. Then, in his twenty-fifth issue on appeal to this Court, Appellant alleges, again in bald and cursory fashion, that all prior counsel were ineffective for failing to raise and/or properly litigate the various issues included in his appellate brief. This Court has previously held that such an undeveloped argument, which fails to at any point meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's

■ Petitioner must also prove that his claims have not been previously litigated. *See* 42 Pa. C.S § 9543(a)(3) (PCRA petitioner must plead and prove that his allegations of error have not been previously litigated in order to be eligible for relief). Appellant claims in his brief to this Court that the PCRA court erred by refusing to conduct an evidentiary hearing regarding his claim that his trial counsel was ineffective for failing to investigate and present evidence that Appellant's mental impairments, in conjunction with the conduct of the police, rendered his confession involuntary. On direct appeal to this Court, Appellant argued that the trial court erred in denying his motion to suppress his confession, because the police psychologically coerced him into making the confession by showing him photos of his victims. *Commonwealth v. Marshall*, 523 Pa. 556, 565–66, 568 A.2d 590, 595 (1989). Appellant's instant ineffectiveness claim constitutes a veiled attempt to relitigate the same suppression issue that he previously raised on his direct appeal to this Court. Thus, the claim has been previously litigated for purposes of the PCRA, and Appellant is not entitled to relief. *See*, 42 Pa.C.S. § 9543(a)(3); 42 Pa.C.S. § 9544(a)(2) (an issue is previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue); *see also Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 602 n. 9 (2000) (noting that generally, an appellant cannot obtain post-conviction review of a claim that was previously litigated on direct appeal by alleging ineffectiveness of counsel and presenting new theories of relief in support of the previously litigated claim) (citations omitted).

■ In his first claim for relief on appeal to this Court which is not waived or previously litigated, Appellant claims that the PCRA court erred in denying his PCRA petition without holding an evidentiary hearing regarding his claims that his attorneys rendered him ineffective assistance in con-

burden of establishing that he is entitled to relief under the PCRA. *See Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001).

nection with the penalty phase of his trial in 1984 and his 1990 penalty phase rehearing.[3] We disagree.

■■■ Initially, counsel is presumed to have rendered effective assistance, and the burden is on the defendant to prove otherwise. *Commonwealth v. Baez,* 554 Pa. 66, 110–12, 720 A.2d 711, 733 (1998). In order to establish a claim of ineffective assistance of counsel under the PCRA, a defendant must plead and prove the following: (1) that the underlying issue is of arguable merit; (2) that counsel had no reasonable basis designed to effectuate his client's interests for the act or omission in question; and (3) prejudice; i.e., but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999). A court may dismiss a PCRA petition without holding a hearing if there are no genuine issues concerning any material fact. Pa.R.Crim.P. 907(1).

In the instant case, Appellant originally told his trial counsel that he did not wish to present any evidence in mitigation at his 1984 penalty phase hearing. However, Appellant changed his mind at the hearing and took the stand to testify in his own defense. Appellant testified that the farthest he got in school was the tenth grade, that his father killed his mother when he was three or four years old, that his grandparents raised him from the time of his mother's murder until he was twelve years old, and that after the age of twelve, he lived in various foster homes. In addition, counsel for Appellant disobeyed his client's prior expressed wishes and presented the testimony of Gloria Fleming, Appellant's maternal aunt,

3. Both Appellant's trial counsel and his counsel for the 1990 penalty phase rehearing represented him through his direct appeals to this Court. Since Appellant's underlying PCRA petition represented his first opportunity to challenge the effectiveness of both of his prior counsel, his properly pled ineffective assistance of counsel claims have not been waived for purposes of the PCRA. *See, e.g., Commonwealth v. Wallace,* 555 Pa. 397, 724 A.2d 916, 921 (1999) (ineffectiveness claims raised by a defendant in a PCRA petition will not be deemed waived so long as the PCRA petition represents his first opportunity to challenge the stewardship of his allegedly ineffective prior counsel) (citations omitted).

and Michelle Pointer, Appellant's sister. Gloria Fleming testified that Appellant's father murdered his mother, that Appellant was then raised by his maternal grandparents for approximately twelve years, and that Appellant thereafter lived in several foster homes. Regarding the years that Appellant spent with his maternal grandparents, Gloria Fleming testified that Appellant's grandparents gave him a good home with a Christian atmosphere, and taught him right from wrong. Michelle Pointer testified that she and Appellant were raised separately, that they saw each other about ten times a year, and that Appellant never talked about the murder of his mother.

At Appellant's 1990 penalty phase hearing, counsel again presented the testimony of Appellant's sister, Michelle Pointer, who again testified that their father murdered their mother when Appellant was three, and that Appellant was raised by his maternal grandparents until his early teens, when he went to several different foster homes. Michelle Pointer further testified that Appellant was shy and introverted, and that she knew there were problems at the foster homes Appellant went to, but that she didn't know the particular circumstances of the problems. Counsel for Appellant also had Gloria Fleming's testimony from the 1984 penalty phase hearing read into the record. Finally, counsel for Appellant read into the record a letter from a corrections counselor at the State Correctional Institute at Huntingdon concerning Appellant's behavior during his incarceration. In the letter, the corrections counselor noted that Appellant's behavior had been very good, that no conduct violations had been reported regarding him, and that he had been quiet and cooperative.

In his brief to this Court, Appellant first contends that he was entitled to an evidentiary hearing on his claim that had prior counsel conducted reasonable investigations prior to his penalty phase hearings in 1984 and 1990, they would have discovered significant evidence that Appellant is mentally and emotionally impaired, which they could have then presented to the juries by way of expert testimony and reports in order to support a finding of the existence of the mental health mitigat-

ing circumstances enumerated at 42 Pa.C.S. § 9711(e)(2) and (3).[4]

In seeking to establish the arguable merit and prejudice prongs of his instant ineffectiveness claim, Appellant attaches an affidavit from psychologist Jethro Toomer, Ph.D. to his brief to this Court. In his affidavit, Dr. Toomer avers that he has examined Appellant, although he does not indicate when, and reviewed various documents, including: statements of family members concerning Appellant's background, Appellant's confession, testimony from Appellant's penalty phase hearings, the report from Appellant's presentence mental health evaluation, and a psychological evaluation report from neuropsychologist Carol Armstrong, Ph.D.[5] Based on his examination of Appellant and review of the various documents, Dr. Toomer offers his opinion that Appellant has suffered from intellectual, psychological and emotional impairments as a result of his childhood and adolescent experiences and organic brain damage. Dr. Toomer further offers his opinion that Appellant suffered from an extreme mental or emotional disturbance at the time of the murders, and that his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

4. 42 Pa.C.S. § 9711(e) provides, in pertinent part, as follows:
 (e) Mitigating circumstances.—Mitigating circumstances shall include the following:
 (2) The defendant was under the influence of extreme mental or emotional disturbance.
 (3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
 42 Pa.C.S. § 9711(e)(2), (3).

5. Dr. Armstrong's report is also attached as an exhibit to Appellant's brief to this Court. Dr. Armstrong's report indicates that she conducted an evaluation of Appellant on August 21, 1997. Appellant has also attached an affidavit from clinical psychologist Kirk Heilbrun, Ph.D., dated March 24, 1998. Thus, Dr. Heilbrun's affidavit did not exist until after the PCRA court dismissed Appellant's petition. Since Appellant failed to procure and present Dr. Heilbrun's affidavit for the PCRA court's consideration, he can not properly present it for the first time in his brief to this Court to support his instant ineffectiveness claim.

Appellant then argues that his prior counsel had no reasonable basis for failing to conduct investigations into potential mental health mitigation evidence and cites to the following "red flags", which he argues should have prompted his prior counsel to investigate potential mental health mitigation: (1) Appellant's statement to the police, in which he admitted committing the murders [6]; (2) the fact that Appellant's father killed his mother when Appellant was a young boy; (3) the fact that Appellant was raised by his grandparents for some time and then sent to various foster homes; (4) that Appellant's father and grandfather had histories of mental illness; (5) that Appellant has an alleged history of drug abuse [7]; and (6) Appellant's presentence mental health evaluation report, which included a diagnosis that Appellant had a "mixed character disorder with paranoid, schizoid and impulsive features" at the time of the evaluation.[8]

**6.** Although Appellant asserts that his confession suggests a disordered thought process, and should have prompted his prior counsel to investigate mental health mitigation, we find no merit to his contention. Appellant, in his confession, indicated that he had sexual intercourse with Sharon Saunders, then grew enraged with her because of how she had been treating him and proceeded to strangle her. Although Appellant argues that there was no logical reason for him to engage in intimacies with Saunders and then suddenly attack her, he conveniently ignores the events leading up to the murder which, when considered in light of his confession, shed light on his probable motive for the murders. Of particular relevance is the fact that Sharon Saunders had recently informed Appellant that he would have to move out of her apartment because her husband was returning from military service. In addition, Appellant's interaction with Myndi McKoy just before he murdered her suggests that he ultimately did so in an effort to ensure that there would be no living witnesses to the murder of Sharon Saunders to implicate him. There is no question that Appellant's confession is a gruesome, detail-specific account of a triple murder. However, it does not strongly suggest a mental impairment on his part.

**7.** Appellant's allegation that he has a history of drug abuse is based solely on his self-reporting of the abuse to his current counsel and the various health care professionals who have examined him since he was convicted of the murders of Sharon Saunders, Myndi McKoy, and Karima Saunders.

**8.** It bears noting that Appellant's presentence mental health evaluation report also includes a professional psychological assessment that he was without psychological disorder and that he demonstrated average intelligence, adequate memory and fair reasoning ability. It also bears noting that the presentence mental health evaluation was not conducted

█ Assuming arguendo that Dr. Toomer's affidavit and Dr. Armstrong's report are sufficient to establish arguable merit and prejudice in connection with Appellant's instant ineffectiveness claim, Appellant still fails to prove, as is his burden, that his prior counsel had no reasonable basis for failing to investigate and present mental health mitigation in support of the mental health mitigating circumstances set forth at 42 Pa.C.S. § 9711(e)(2) and (3) at his 1984 penalty phase hearing and 1990 penalty phase rehearing. In this regard, we find it significant that Appellant does not even indicate whether or not he would have cooperated with his prior counsel had they pursued an investigation of potential mental health mitigating evidence to present at his 1984 and 1990 penalty phase hearings, especially in light of the fact that Appellant directed his trial counsel not to present any mitigating evidence on his behalf at the 1984 penalty phase hearing and refused to be examined by a psychiatrist after his trial counsel successfully petitioned the trial court for leave to hire one.[9] In addition, we find it significant that Appellant has failed to either: (1) produce affidavits from his prior counsel concerning their interactions with him and their actual investigations in preparation for the 1984 and 1990 penalty phase hearings; or (2) provide some explanation why he was unable to procure affidavits from his prior counsel.[10] Finally, even if

until after the 1984 jury returned its verdicts of death and life imprisonment against Appellant.

9. During Appellant's 1984 penalty phase hearing, Appellant's trial counsel informed the court that he asked for leave to hire a psychiatrist in order to pursue the possibility of a guilty but mentally ill defense, but Appellant refused to be examined by the psychiatrist, because he steadfastly maintained his innocence and did not want anything entered into the record suggesting that he committed the murders in any way. We cannot discern, and Appellant fails to explain why he would absolutely refuse to be examined by a psychiatrist for the purpose of determining whether a guilty but mentally insane defense should be pursued, but would nevertheless agree to be evaluated by a mental health expert for the purpose of investigating potential mental health mitigation.

10. In fact, Appellant makes no showing that his trial counsel either was, or should have been aware of most of the alleged "red flags" prior to the morning of his penalty phase hearing in 1984. Most notably, Appellant fails to offer any indication that he told his trial counsel about

we were to assume that all of the "red flags" cited by Appellant were or should have been known to his counsel prior to his penalty phase hearings, we are not convinced that they, either individually or in the aggregate, would mandate an investigation on the part of counsel into potential mental health mitigation. Thus, we find that Appellant has failed to establish that his prior counsel had no reasonable basis for failing to investigate and present mental health mitigation at his 1984 and 1990 penalty phase hearings.

■ In a related claim, Appellant alleges that his prior counsel were ineffective for failing to investigate and present testimony from several of his family members, including his brother and paternal aunt, at his 1984 penalty phase hearing and 1990 penalty phase rehearing. According to Appellant, the testimony that his family members could have provided would have shed light on his troubled childhood and upbringing to support a finding of the "catchall" mitigating circumstance enumerated at 42 Pa.C.S. § 9711(e)(8). In so arguing, Appellant ignores the fact that his prior counsel presented testimony at his penalty phase hearings from his sister and maternal aunt concerning Appellant's troubled childhood, including the murder of Appellant's mother by his father when he was a young boy, and Appellant's subsequent upbringing in the home of his maternal grandparents and several foster homes in support of the existence of the catchall mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(8). More importantly, Appellant ignores the fact that based on the testimony presented by counsel from Appellant's sister and maternal aunt, both of the juries considering his fate actually found the existence of the catchall mitigating circumstance enumerated at 42 Pa.C.S. § 9711(e)(8). Since the juries at both penalty phase hearings actually found the existence of the catchall mitigating circumstance based on the testimony pre-

his troubled childhood and/or his alleged drug abuse. As we have noted before, in this context, the reasonableness of counsel's actions or omissions depends in critical part upon the information supplied by the defendant. *See Commonwealth v. Basemore,* 560 Pa. 258, 289, 744 A.2d 717, 735 (2000) (citing *Commonwealth v. Peterkin,* 511 Pa. 299, 319, 513 A.2d 373, 383 (1986)).

sented concerning Appellant's troubled childhood and upbringing, Appellant's instant ineffectiveness claim necessarily fails for lack of prejudice. *See Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 n. 7 (2000) (appellant fails to establish prejudice in connection with an ineffectiveness claim based on counsel's failure to investigate and present additional evidence in support of a finding of a mitigating circumstance when that mitigating circumstance was already found to exist without the benefit of the additional evidence).

Appellant further argues, in cursory fashion, that his counsel for his 1990 penalty phase rehearing was ineffective for failing to present evidence in support of a finding of the mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(4), the age of the defendant at the time of the murder. At the time that he committed the murders of Sharon Saunders, Myndi McKoy, and Karima Saunders, Appellant was 20 years old. Bearing in mind that counsel for Appellant at his 1990 penalty phase rehearing made sure that the jury was informed of Appellant's age at the time of the murders [11], Appellant fails to indicate what other evidence or what potential argument counsel could or should have presented in support of a finding of the mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(4). Nor does Appellant make any attempt to establish, as is his burden, that his counsel had no reasonable basis for failing to present evidence or argument concerning Appellant's age during the 1990 penalty phase hearing. Thus, his instant ineffectiveness claim necessarily fails.

Next, Appellant claims that the PCRA court erred by denying his petition without first holding an evidentiary hearing regarding his claim that his trial counsel was ineffective for failing to pursue a diminished capacity defense on his behalf. Appellant's claim is without merit, for, as the PCRA court notes in its 1925(a) opinion, Appellant consistently maintained his innocence throughout his trial, including his 1984 penalty phase hearing, where he took the stand and testified

11. Counsel for Appellant elicited testimony from Appellant's sister, Michelle Pointer, that Appellant was 20 years old at the time of the murders. (N.T., 7/26/1990, at 57.)

that he did not commit the murders in question. Counsel for Appellant presented a defense of innocence, consistent with Appellant's insistence that he did not commit the murders. Therefore, counsel will not be found ineffective for failing to investigate the availability of a diminished capacity defense, which concedes guilt, but challenges the defendant's mental capacity at the time the crime was committed. *Commonwealth v. Cross*, 535 Pa. 38, 43–44, 634 A.2d 173, 175–76 (1993).

Next, Appellant claims that the PCRA court erred by failing to hold an evidentiary hearing on his claim that the trial testimony of the medical examiner, Dr. Aronson, was misleading, and that therefore, his trial counsel was ineffective for failing to impeach him. This claim fails.

At Appellant's trial, Dr. Aronson testified that the cause of Myndi McKoy's and Karima Saunder's deaths was ligature strangulation, but that he could not exclude drowning as a contributing cause to their deaths. (N.T., 8/3/84, 23–24, 28, 57–58.) Appellant contends that his trial counsel should have impeached Dr. Aronson's testimony that he could not exclude drowning as a contributing cause of the deaths because such testimony was misleading and/or deceptive. In support of his contention, Appellant points to a specific portion of Dr. Aronson's testimony at his 1990 penalty phase rehearing. However, this testimony from the 1990 penalty phase rehearing clearly indicates that Dr. Aronson's testimony was fully consistent with his prior testimony at Appellant's trial that he could not exclude drowning as a contributing cause to the deaths of Myndi McKoy and Karima Saunders. In response to questioning by Appellant's counsel, Dr. Aronson testified as follows at the 1990 penalty phase rehearing:

Q: Now, there has been some discussion here about whether you could eliminate drowning as a cause of death, and you said you could not. On the other hand, you have said that with regard to two of these people, Myndi McKoy and Sharon Karima Saunders, that you can eliminate drowning as the cause of death but you cannot eliminate it as contributing. I wonder if you could clarify that.

A: Let me clarify. I think you misspoke in your question about cause. I cannot eliminate in any of these cases that drowning was some factor somewhere along the line. I can eliminate in all three that it was a cause of death, because of the discoloration of the mucous membrane, indicating that the person was alive at the time the pressure was put on their neck.

(N.T., 7/25/90, at 83.)

In his brief to this Court, Appellant carefully quotes only Dr. Aronson's statement that he could eliminate drowning as the cause of all three deaths, and argues that Dr. Aronson's testimony establishes that he lied to the jury at Appellant's trial when he testified that he could not exclude drowning as a contributing cause to Myndi McKoy's and Karima Saunder's deaths. However, by removing Dr. Aronson's statement from the context in which it was made, it is actually Appellant's argument that is misleading. Dr. Aronson's response to counsel's request for clarification, taken as a whole, indicates that although he could not exclude drowning as a contributing factor to the deaths of Myndi McKoy and Karima Saunders, he was certain that ligature strangulation was the actual cause of their deaths. His testimony is therefore entirely consistent with his prior testimony at Appellant's trial that ligature strangulation was the cause of Myndi McKoy's and Karima Saunder's deaths, but that drowning could not be excluded as a contributing cause of their deaths. Since Dr. Aronson's trial testimony was neither deceptive nor misleading, Appellant's instant ineffectiveness claim necessarily fails.[12]

12. Appellant's instant claim for relief is fashioned both as a prosecutorial misconduct claim and an ineffective assistance of counsel claim. To the extent that Appellant claims that the Commonwealth's presentation of Dr. Aronson's testimony constituted prosecutorial misconduct, said claim is waived, since Appellant could have but did not raise the claim in his direct appeal to this Court. 42 Pa.C.S. § 9544(b). Assuming arguendo that Appellant did not waive his prosecutorial misconduct claim for purposes of the PCRA by failing to raise it in his direct appeal, we would nevertheless find the claim to be without merit, since it too would be based on the false premise that Dr. Aronson's trial testimony was misleading and/or deceptive.

■■■ Next, Appellant argues that the absence of a record of the sidebar proceedings during his trial and the supposed disappearance of the transcript from a voir dire session that allegedly took place on the afternoon of July 23, 1990 have worked to deny him the effective assistance of counsel on appeal.[13] This claim fails.[14]

■■■ In order to ensure a defendant's right to meaningful appellate review, this Court "require[s] that he or she be furnished a full transcript or other equivalent picture of the trial proceedings." *Commonwealth v. Shields*, 477 Pa. 105, 383 A.2d 844, 846 (1978). With this in mind, it is settled law that in order for a defendant to establish entitlement to relief based on the incompleteness of the trial record, he must first make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript. *See, e.g., Commonwealth v. Albrecht*, 554 Pa. 31, 47–48, 720 A.2d 693, 701–702 (1999). In his appeal to this Court, Appellant fails to raise any potentially meritorious challenge that cannot be adequately reviewed due to the absence of a record of the sidebar discussions from his trial and/or the transcript from the alleged voir dire session on the afternoon of July 23, 1990. Accordingly, his instant claim of ineffective assistance of counsel necessarily fails for lack of prejudice.[15]

13. With regard to Appellant's allegation that the transcript of a voir dire session that took place on the afternoon of July 23, 1990 has somehow become missing, we note that the record suggests that there was no voir dire session on that afternoon, since the last juror selected to serve on the jury during the voir dire proceedings taking place on the morning of July 23, 1990 was juror number 10, and the first juror selected to serve on the jury during the voir dire proceedings that took place on July 24, 1990 was juror number 11. (N.T., 7/23/90, at 83; 7/24/90, at 35.)

14. To the extent that Appellant's instant claim for post-conviction relief is not framed as an ineffective assistance of counsel claim it is waived, since Appellant failed to raise a claim for relief based on the incompleteness of the trial record in his direct appeal to this Court. 42 Pa.C.S. § 9544(b).

15. In addition, we note that nothing in the record indicates that the trial court prohibited Appellant's trial counsel from placing any argument, objections, or reasons for his objections that were raised in the untranscribed sidebar discussions on the record. Nor does Appellant argue that his trial counsel was ineffective for failing to do so.

Appellant also argues that his death sentence must be vacated because this Court failed to provide him with meaningful proportionality review on direct appeal. This claim fails.

In Appellant's direct appeals to this Court, we conducted a proportionality review of Appellant's sentences, stating in his first direct appeal that after reviewing a "comprehensive study conducted by the Administrative Office of Pennsylvania Courts [AOPC] of all cases resulting in a conviction for murder in the first degree," the Court found no excess or disproportionality in the sentence imposed. *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590, 600 (1989); *Commonwealth v. Marshall*, 537 Pa. 336, 643 A.2d 1070, 1077 (1994) (conducting proportionality review of Appellant's death sentence and finding that it was not disproportionate).[16] In his instant appeal to this Court, Appellant essentially argues that the data complied by the AOPC does not adequately allow for meaningful proportionality review. We have, of course, previously rejected a similar claim:

When we conduct our [proportionality] review, we examine not only the complied data from the AOPC, but we also have at our disposal the verdict sheets and the review forms submitted by the President Judges. This allows us to conduct a thorough review of cases similar to the one in questions and provides additional screening for any anomalies that may be present in the AOPC database. We have carefully reviewed these procedures and find nothing arbitrary or capricious in this scheme. Instead, we believe that our proportionality review comports with the General Assembly's desire to afford capital defendants an additional check against arbitrary imposition of the death penalty.

**16.** We note that on June 25, 1997, the Governor signed legislation that removed a proportionality review requirement from the death penalty statute. Act of June 25, 1997, No. 28 § 1 (Act 28). However, Act 28 does not apply retroactively to death sentences, such as Appellant's, imposed before June 25, 1997. *See Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 439–40 (1998), *abrogated on other grounds, Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136 (2001).

*Gribble,* 703 A.2d at 440. As we find that this reasoning applies equally to Appellant's claim here, that claim necessarily fails.

 Next, Appellant claims, in bald and cursory fashion, that the PCRA court did not engage in a careful, independent review of his PCRA petition, but merely adopted the Commonwealth's arguments in denying him relief. We can discern nothing from the record to support Appellant's allegation that the PCRA court abdicated its duty to engage in an independent review of the numerous claims for relief raised in Appellant's PCRA petition. Thus, we do not hesitate to conclude that Appellant's instant claim fails to provide him with a basis for relief.

Finally, Appellant argues that even if this Court finds that he is not entitled to relief based on any of his particular claims, we should nevertheless find that he is entitled to relief because the cumulative effect of the errors described in his appeal was to deny him a fair trial. As this Court has stated before, however, "no number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Williams,* 532 Pa. 265, 278, 615 A.2d 716, 722 (1992). As none of Appellant's claims on appeal to this Court afford him post-conviction relief, we affirm the PCRA court's order denying relief.[17]

---

17. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i)(Supp.1997).