J-S40007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LAMONT OVERBY :
:
Appellant : No. 2513 EDA 2018

Appeal from the Order Dated July 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1006081-1996

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    Filed: December 30, 2020

Appellant, Lamont Overby, appeals from the order denying his claims

presented in his petition filed pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In relation to Appellant's direct appeal, the trial court summarized the

underlying facts of this case as follows:

> On August 27, 1996, the decedent, John James and his
> friend, Caesar Cross, were sitting on the steps of 2054 Reed Street
> drinking beer and talking.  It was early afternoon and there were
> a number of people gathered in the general area.
>
> [Appellant] approached the two young men, said hello, and
> continued walking. Suddenly, [Appellant] pulled a gun, turned and
> began shooting at James and Cross.
>
> The decedent, John James, alerted his friend, Caesar Cross,
> to the trouble and urged him to run.  Both men ran, however,

---

[*] Retired Senior Judge assigned to the Superior Court.

James was shot in the back and fell in the street. [Appellant] stood over his victim and fired 4 more shots into him. [Appellant] fled the area, but was arrested the next day. An arrest warrant was issued largely on the identification provided by Caesar Cross who knew [Appellant] from the neighborhood. A second witness, Reginald Ector, who was in the area on business, also witnessed the killing and identified [Appellant] as the shooter.

[Appellant] did not testify, but presented his grandmother, Helen Overby, who provided an alibi for [Appellant]. She testified that [Appellant] was several blocks away from the crime scene at the time of the killing working on his mother's home.

Trial Court Opinion, 3/16/01, at 2-3.

The PCRA court set forth the procedural history as follows:

Appellant was convicted of first degree murder and related charges following a jury trial before the Honorable James Lineberger. After a penalty hearing, the jury sentenced Appellant to death. The judgment[] of sentence was affirmed by our Supreme Court and [*certiorari*] was denied by the Supreme Court of the United States. ***Commonwealth v. Overby***, 836 A.2d 20 (Pa. 2003), *certiorari denied*, 542 U.S. 906 (2004). The facts found by the jury demonstrated that Appellant shot and killed an unarmed man on the street for no apparent reason.

Appellant then filed the instant timely PCRA Petition. Counsel was appointed [and] filed an Amended Petition. The matter was initially assigned to the Honorable Renee Cardwell Hughes following Judge Lineberger's retirement. After Judge Hughes left the bench the matter was then assigned to this [c]ourt. Subsequently[,] the Defender's Association of Philadelphia Capital Habeas Corpus Unit entered its appearance and previously appointed counsel withdrew. After being allowed additional time to prepare, new counsel filed an additional Amended Petition raising fourteen claims[,] which [challenged] trial counsel's effectiveness at both the guilt phase and sentencing phases of the case. It also challenged appellate counsel's effectiveness.

At the request of the parties, this [c]ourt bifurcated its review, focusing first on the penalty phase claims. After reviewing the pleadings and the record, this court determined Appellant's

- 2 -

sentencing claims to be meritorious. Without objection, the death sentence was vacated and Appellant was resentenced to life imprisonment.

Focus shifted to Appellant's guilt phase claims. After review[,] this [c]ourt determined that some claims were baseless. However, Appellant was granted an evidentiary hearing on some of his claims. Following the evidentiary hearing and after review of supplemental memos, all of Appellant's guilt phase claims were denied. The instant timely appeal followed.

PCRA Court Opinion, 9/27/19, at 1-2. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Were [Appellant's] constitutional rights violated where the trial court refused to conduct individualized voir dire and improperly excluded certain prospective jurors simply because a family member had been arrested or imprisoned; and was appellate counsel ineffective for failing to raise this claim on direct appeal?

II. Were [Appellant's] constitutional rights violated because trial counsel ineffectively failed to request the appropriate cautionary charge on identification testimony pursuant to Commonwealth v. Sexton[1] and failed to object to the prosecution's incorrect statements concerning the identification process?

III. Were [Appellant's] constitutional rights violated where the prosecution's closing argument and solicitation of hearsay evidence violated [Appellant's] constitutional rights and because trial counsel was ineffective for opening the door to such evidence and failing to object to it?

IV. Did the prejudicial effects of the cumulative errors in this case undermine confidence in the outcome of [Appellant's] trial?

Appellant's Brief at 1-2.

---

[1] **Commonwealth v. Sexton**, 400 A.2d 1289 (Pa. 1979).

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Robinson***, 139 A.3d 178, 185 (Pa. 2016). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014).

In each of his first three issues, Appellant raises claims challenging the effective assistance of prior counsel. Our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

We observe that claims of ineffective assistance of counsel are not self-proving. ***Commonwealth v. Wharton***, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the

ineffectiveness standard...." ***Commonwealth v. D'Amato***, 856 A.2d 806, 812 (Pa. 2004).

Pursuant to the first prong, we note that where an appellant is not entitled to relief with regard to the underlying claim upon which his ineffectiveness claim is premised, he is not entitled to relief with regard to his ineffectiveness claim. ***Commonwealth v. Ousley***, 21 A.3d 1238, 1246 (Pa. Super. 2011). In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has discussed "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Commonwealth ex rel. Washington v. Maroney***, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that but-for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citing *Commonwealth v. Sneed*, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record. *Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)).

Appellant first argues that appellate counsel rendered ineffective assistance in failing to present a claim on direct appeal. Appellant's Brief at 8-17. Appellant asserts that appellate counsel improperly failed to argue that the trial court erred in conducting *voir dire*. Specifically, Appellant contends that the trial court erred in refusing to conduct individual *voir dire* of

prospective venire persons and excluding prospective jurors who had incarcerated family members. *Id*. at 8-16.

Mindful of the test for a challenge to the effective assistance of counsel set forth in *Pierce*, we observe that a criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution. Accordingly, the purpose of *voir dire* solely is to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. *Commonwealth v. Floyd*, 937 A.2d 494, 502-503 (Pa. Super. 2007). As the Pennsylvania Supreme Court explained in *Commonwealth v. Johnson*, 305 A.2d 5 (Pa. 1973):

> the purpose of the *voir dire* examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence. The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula r[a]sa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously avoiding the influences of irrelevant factors.

*Id*. at 8.

With these concepts in mind, we further observe that the manner in which *voir dire* will be conducted is left to the discretion of the trial court. *Commonwealth v. Moore*, 756 A.2d 64, 65 (Pa. Super. 2000). In Pennsylvania, the trial judge may determine whether to question the venire

persons collectively or individually. ***Commonwealth v. Hathaway***, 500 A.2d 443, 448 (Pa. Super. 1985) (citing former Pa.R.Crim.P. 1106, now Pa.R.Crim.P. 631). ***See also Commonwealth v. DeHart***, 516 A.2d 656, 662 (Pa. 1986) (approving, in capital case, group questioning of jurors regarding preliminary matters prior to individual *voir dire*). However, we have long observed that "a complete denial of the right to an examination of jurors to show bias or prejudice is a palpable abuse of discretion and entitles the defendant to a new trial." ***Commonwealth v. Holland***, 444 A.2d 1179, 1180 (Pa. Super. 1982) (quoting ***Commonwealth v. Foster***, 293 A.2d 94 (Pa. Super. 1972)).

The scope of *voir dire* rests in the sound discretion of the trial judge, whose decision will not be reversed unless palpable error is established. ***Commonwealth v. Robinson***, 864 A.2d 460, 488 (Pa. 2004). Similarly, "[t]he decision … whether or not counsel may propose their own questions of potential jurors during *voir dire* is a matter left solely within the discretion of the trial court." ***Commonwealth v. Paolello***, 665 A.2d 439, 451 (Pa. 1995). *Voir dire* is neither a litmus test of the effectiveness of trial strategies nor a means to empanel a jury sympathetic to a defendant's case. ***See Robinson***, 864 A.2d at 488 (quoting ***Commonwealth v. Smith***, 540 A.2d 246 (Pa. 1988)) ("[T]he purpose of the *voir dire* examination is not to provide a better basis upon which a defendant can exercise his peremptory challenges, but to determine whether any venire man has formed a fixed opinion as to the

accused's guilt or innocence."). Accordingly, as long as the *voir dire* questions are sufficient to ensure a fair and impartial jury capable of following the court's instructions, we will not interfere with the trial court's rulings. ***Id***. Thus, "[n]either counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of the case." ***Commonwealth v. Bomar***, 826 A.2d 831, 849 (Pa. 2003) (citing ***Commonwealth v. Carson***, 741 A.2d 686 (PA. 1999)).[2]

Also, "[c]laims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight." ***Commonwealth v. Ellison***, 902 A.2d 419, 424 (Pa. 2006). Decisions of the trial judge concerning *voir dire* therefore will not be reversed in the absence of palpable error. ***Id***. As a general rule, we have consistently explained that an abuse of discretion

---

[2] We observe that Pennsylvania Rule of Criminal Procedure 632 mandates the use of the form questionnaire contained in paragraph H of the rule. Pa.R.Crim.P. 632(A), (H). Paragraph D provides that these questionnaires "shall be used in conjunction with the examination of the prospective jurors." Pa.R.Crim.P. 632(D). The comment to Rule 632 further provides that: "Paragraph (D) makes it clear that juror information questionnaires are to be used in conjunction with the oral examination of the prospective jurors, and are not to be used as a substitute for the oral examination. Juror information questionnaires facilitate and expedite the *voir dire* examination by providing the trial judge and attorneys with basic background information about the jurors, thereby eliminating the need for many commonly asked questions." Pa.R.Crim.P. 632, comment.

is more than just an error in judgment, and on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. **Commonwealth v. Griffin**, 804 A.2d 1, 7, 12 (Pa. Super. 2002). In addition, we are mindful that an appellant who challenges a trial court's jury-selection procedure carries the burden of proving that the jury empaneled was not impartial. **Commonwealth v. Keaton**, 729 A.2d 529, 544-545 (Pa. 1999).

Assuming for the sake of argument that there is merit to the underlying claim that the trial court mishandled *voir dire* and that appellate counsel should have raised this claim on direct appeal, we observe that Appellant has failed to establish that he suffered prejudice. Instantly, Appellant's argument in this regard lacks any significant discussion of the prejudice prong of ineffective assistance. Appellant's Brief at 17. Specifically, to establish prejudice Appellant presents a bald assertion that there is a "reasonable probability" that he would have been granted a new trial on direct appeal. **Id**. However, Appellant has failed to prove that trial counsel's omission of an argument regarding the trial court's handling of *voir dire* led to the empaneling of a jury that was not fair and impartial, thereby causing actual prejudice. **Keaton**, 729 A.2d at 544-545.

Thus, Appellant's argument lacks any significant discussion of the prejudice prong of the **Pierce** test. As our Supreme Court has long stated,

claims of ineffective assistance of counsel are not self-proving. ***Wharton***, 811 A.2d at 986. A PCRA petitioner must present appropriate argumentation relative to all three prongs of the ineffectiveness standard. ***D'Amato***, 856 A.2d at 812. Moreover, Appellant has failed to establish that he would be entitled to relief on the underlying claim upon which this issue of ineffectiveness is premised. ***Ousley***, 21 A.3d at 1246. Hence, we conclude that Appellant has failed to establish his claim that appellate counsel was ineffective. Accordingly, we discern no merit to Appellant's claim in this regard.

Appellant next argues that trial counsel was ineffective with regard to identification testimony offered by Reginald Ector at Appellant's trial. Appellant's Brief at 18-33. Appellant contends that trial counsel was ineffective for failing to request a ***Sexton*** jury instruction. ***Id***. at 23-27. In addition, Appellant asserts that trial counsel was ineffective for failing to object to the prosecutor's statements during closing argument pertaining to prior identifications. ***Id***. at 27-30.

Initially, Appellant asserts that because Mr. Ector identified Appellant for the first time in the courtroom, the eyewitness testimony should be considered with caution. Appellant's Brief at 20-22. Appellant notes that, because Mr. Ector never participated in a lineup identification and was never shown a photo array prior to offering testimony, counsel should have sought to exclude the testimony or have a lineup conducted prior to testimony. ***Id***. at 22. Appellant

further posits that, in the absence of a lineup, trial counsel should have requested a cautionary jury instruction under *Sexton*. *Id*. at 23-27.

In *Sexton*, our Supreme Court examined when a lineup should be granted and the remedies for a trial court's failure to grant a valid request for a lineup. The *Sexton* Court held that a trial court had abused its discretion by failing to grant Sexton's request for a lineup prior to his certification hearing. *Sexton*, 400 A.2d at 1290-1292. The Court stated that it could:

> perceive of no situation where such a request would be more warranted. The sole evidence connecting appellee to this crime was the identification of Mr. Weinstein, who had no knowledge of appellee before the incident, observed the culprit briefly before and during the crime, had no contact with the appellee between the arrest and the certification hearing, and had not been presented with an opportunity of a photographic identification prior to the hearing confrontation.

*Id*. at 1292 (footnote omitted). Our Supreme Court explained that "where[,] as here[,] the issue of identification is legitimately at issue, a timely request for a pre-trial or pre-hearing identification procedure should be granted," and concluded that upon remand for a new trial, the appropriate remedy would be to advise "the finder of fact hearing the [case] … that [Sexton] had been denied the opportunity for a more objective identification and for that reason the subsequent less reliable identification could be viewed with caution." *Id*. at 1293.

"Generally, the grant or denial of a request for a lineup is within the sound discretion of the trial court, and such a decision will not be disturbed on review absent an abuse of discretion." *Commonwealth v. Ingram*, 591

A.2d 734, 740 (Pa. Super. 1991). Moreover, this Court has held that a request for a lineup should be granted "only in those cases where an identification lacking a strong indicia of reliability is **the sole evidence against the defendant**[.]" *Commonwealth v. Beverly*, 547 A.2d 766, 767 (Pa. Super. 1988) (emphasis added). *See Commonwealth v. Blassingale*, 583 A.2d 181, 190 (Pa. Super. 1990) (explaining that a lineup is required when it is timely requested and the sole evidence against the defendant is an identification lacking a strong indicia of reliability).

Our review of the record reflects that Appellant did not present a timely request to the trial court for a lineup. As Appellant states in his brief to this Court:

> Trial counsel requested, per his earlier preservation of the issue, that a lineup be conducted before any identification testimony was allowed even though, as trial counsel noted, Mr. Ector had already entered the courtroom and [saw] Appellant at the defense table. Trial counsel also asked that Mr. Ector be precluded from testifying, arguing that it would be unfair to Appellant for Mr. Ector to make a first-time identification two years after the shooting and in the courtroom. [N.T., 7/16/98,] at 47. The trial court denied the request ….

Appellant's Brief at 19. Thus, we discern no abuse of discretion on the part of the trial court in refusing to grant Appellant's untimely request for a lineup. *Ingram*.

In addition, the record reveals that the identification testimony of Mr. Ector was not the sole evidence against Appellant. Rather, our review indicates that Caesar Cross, who knew Appellant from the neighborhood,

- 13 -

witnessed the shooting. Mr. Cross offered detailed testimony pertaining to the entire incident, including identification evidence of Appellant. N.T., 7/16/98, at 52-140. Accordingly, Mr. Ector's identification does not lack a strong indicia of reliability. For this reason as well, the trial court did not abuse its discretion in denying an untimely request for a lineup. *Beverly*, 547 A.2d at 767, *Blassingale*, 583 A.2d at 190.

Accordingly, we cannot conclude that the trial court abused its discretion in refusing to grant Appellant's request to subject Mr. Ector to a lineup prior to offering his testimony. Because the trial court did not abuse its discretion in this regard, Appellant was not entitled to a *Sexton* instruction. Therefore, Appellant's claim lacks arguable merit.

Appellant also argues that trial counsel was ineffective for failing to object to the prosecutor's closing argument, which allegedly presented misstatements of the law surrounding prior identifications and bolstered Mr. Ector's identification testimony. Appellant's Brief at 27-33. Specifically, Appellant claims that the prosecutor's statement, referencing Detective Maria DiBlasi's comments regarding her ability to show Mr. Ector a photo array after Appellant's arrest, was legally incorrect. *Id*. at 28-29.

A prosecutor is allowed wide latitude in advocating for the Commonwealth, including the right to argue all fair deductions from the evidence, to respond to defense arguments, and to engage in a certain degree

of oratorical flair.  ***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa. 2009).

In addition, we are mindful of the following:

> A claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process.  To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.  The touchstone is fairness of the trial, not the culpability of the prosecutor.

> We further reiterate that a prosecutor has reasonable latitude during his closing argument to advocate his case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury.  The court must evaluate a prosecutor's challenged statement in the context in which it was made.  Finally, [n]ot every intemperate or improper remark mandates the granting of a new trial; [r]eversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

***Commonwealth v. Hanible***, 30 A.3d 426, 464-465 (Pa. 2011) (quotation marks and citations omitted).

Our review of the record reflects that Detective DiBlasi offered the following testimony pertaining to a lineup being shown to Mr. Ector: "[O]nce [Appellant] was in custody, I cannot show [Mr. Ector] any photographs, and I thought that maybe at some point down the road, [Mr. Ector] would have what we call a lineup, however, that never became an issue."  N.T., 7/16/98,

- 15 -

at 154. Subsequently, the prosecutor made the following statement during closing argument:

> You heard from Detective DiBlasi. You can't show it, you can't show pictures when somebody's under arrest. You'd be violating their rights. If after [Appellant] was arrested and photos were taken to [Mr. Ector] and shown, [trial counsel] would have been screaming to high heaven much like … a few minutes ago. Don't speculate [Mr. Ector] maybe should have been shown pictures, maybe he should have gone to a lineup.

N.T., 7/20/98, at 66-67.

Upon review of both Detective DiBlasi's statements and the prosecutor's comments, it is our determination that they were both offered to explain limitations placed upon showing Mr. Ector a photographic array or lineup immediately after Appellant had been arrested. Both statements properly referenced the restrictions upon presenting a witness with a lineup immediately after a defendant is placed in custody. *See Commonwealth v. Harrell*, 65 A.3d 420, 438 (Pa. Super. 2013) (explaining that a defendant has a constitutional right to have counsel present during identification procedures, which is triggered by the arrest of the accused). Moreover, to the extent that we could conclude that the prosecutor's comments were not a full reflection of the law, it is our determination that the remark would not mandate a new trial because the comments did not suggest that once Appellant was arrested, no identification procedure would have been permissible. The passing comment by the prosecutor pertaining to the limitations of an identification process after Appellant had been arrested did not have the unavoidable effect

of prejudicing the jurors and forming in their minds a fixed bias and hostility toward Appellant such that they could not weigh the evidence and render a true verdict. This is especially so in light of the identification testimony of Mr. Cross referenced earlier. Hence, there is no merit to Appellant's underlying claim that trial counsel was ineffective for failing to object during the prosecution's closing argument. Accordingly, these allegations of ineffective assistance lack merit.

Appellant next argues that trial counsel was ineffective for failing to object to various errors made by the prosecutor. Appellant's Brief at 33-48. Specifically, Appellant claims that trial counsel should have objected to the prosecutor's allegedly improper reference to Appellant's refusal to testify. *Id*. at 33-37. Also, Appellant contends that trial counsel was ineffective for failing to object to the prosecutor's argument that referred to facts not in evidence, *i.e.*, that many people witnessed the crime but were afraid to testify at trial. *Id*. at 37-43. In addition, Appellant asserts that trial counsel was ineffective for failing to object to the prosecutor's allegedly improper eliciting of hearsay testimony and subsequent reliance upon that testimony during closing arguments. *Id*. at 43-48. Precisely, Appellant takes umbrage with trial counsel's failure to object to the prosecutor's cross-examination of Appellant's grandmother's testimony that she learned of Appellant's arrest through "hearsay, they said that [Appellant] had shot a boy around on Reed Street." *Id*. at 43-44 (citing N.T., 7/17/98, 59). Appellant further assails the fact that

trial counsel did not object to the prosecutor's closing argument that referenced the grandmother's testimony by stating: "She told you … people in the neighborhood were saying [Appellant] killed the guy." *Id*. at 44 (citing N.T., 7/20/98, 64).

Assuming, *arguendo*, that there is merit to the underlying claims of ineffective assistance and that Appellant suffered prejudice from trial counsel's inaction, we would conclude that Appellant has failed to establish that counsel lacked a reasonable basis for not objecting to the various points of alleged error on the part of the prosecution. Our review reflects that Appellant has failed to establish the second prong of the ineffectiveness test.

Our Supreme Court explained in **Commonwealth v. Cousar**, 154 A.3d 287 (Pa. 2017), the following regarding the requirements to establish the second prong of the test:

> [m]ere conclusory allegations, without some proffer as to what counsel would say in response to the allegations[,] are insufficient to establish entitlement to relief. Thus, a supporting document from counsel stating his reasons for the course chosen is generally necessary to establish potential entitlement to a hearing. **See, e.g.**, Pa.R.Crim.P. 902(A)(12)(b) ([stating that a] PCRA petition shall contain facts supporting each ground for relief; if supporting facts do not appear of record[,] "affidavits, documents and other evidence showing such facts" [should] be identified).
>
> * * *
>
> Although [the Supreme] Court has dismissed claims of ineffectiveness where [the] appellant has not provided counsel's affidavit, we have indicated we may overlook the failure where appellant adequately explains why he did not submit it. **See Commonwealth v. Marshall**, 571 Pa. 289, 812 A.2d 539, 547-[5]48 (Pa. 2002) ([stating that a] significant factor in finding

- 18 -

[that] appellant did not establish [that] prior counsel had no reasonable basis for inaction was appellant's failure to provide [an] affidavit, or explanation as to why he was unable to procure [an] affidavit).

*Cousar*, 154 A.3d at 300.

While the Court in *Cousar* recognized that the failure to include this supporting document may be overlooked in situations where an appellant adequately explains why he did not submit the information, it concluded that it is proper to decline to consider an appellant's argument where he or she offers neither the documentation or an explanation. *Id*. at 300 (citing *Commonwealth v. Marshall*, 812 A.2d 539, 547-548 (Pa. 2002) (significant factor in finding the appellant did not establish prior counsel had no reasonable basis for inaction was appellant's failure to provide affidavit, or explanation as to why he was unable to procure affidavit)). Ultimately, the *Cousar* Court determined that the appellant's use of hindsight analysis and conclusory argument to support the claim that trial counsel could not have had a reasonable basis for failing to request a limiting instruction failed to merit relief, or even an evidentiary hearing. *Id*. at 304.

Here, Appellant has made no showing that trial counsel's actions lacked a reasonable basis. Although Appellant asserts that trial counsel had no reasonable basis with regard to these claims of ineffective assistance, Appellant's Brief at 37, 42-43, 46, Appellant has overlooked that he carries the burden to come forward with relevant proof on this issue. We observe that Appellant has failed to offer an affidavit or certification from trial counsel

that explained the trial strategy or reasonable basis for trial counsel's inaction with regard to lodging objections. Moreover, Appellant has failed to explain why he was unable to procure an affidavit from trial counsel. This reason alone impairs Appellant's ineffectiveness claim. **Cousar**, 154 A.3d at 304, **Marshall**, 812 A.2d at 547-548. Therefore, Appellant has failed to meet the second requirement for his ineffectiveness claim. Hence, we cannot grant Appellant relief on Appellant's third issue. **See Daniels**, 963 A.2d at 419 (stating that a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness).

In his final issue, Appellant argues that the cumulative effect of the errors alleged herein denied him a fair trial. Appellant's Brief at 48-49. However, we observe that our Supreme Court has repeatedly stated that "no number of failed claims may collectively attain merit if they could not do so individually." **Commonwealth v. Lopez**, 854 A.2d 465, 471 (Pa. 2004) (quoting **Commonwealth v. Williams**, 615 A.2d 716, 722 (Pa. 1992)). Because we have held that there were no errors warranting relief, Appellant's allegation of cumulative error fails.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/30/20</u>