**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3273
_____

JAY BOYER, JR.

v.

SUPERINTENDENT HOUTZDALE SCI;
PA ATTORNEY GENERAL

SUPERINTENDENT HOUTZDALE SCI,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-08-cv-01079)
District Judge:  Hon. Sylvia Rambo

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 13, 2015

Before:  CHAGARES, JORDAN, and VANASKIE, Circuit Judges.

(Filed: August 4, 2015)
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

The Commonwealth of Pennsylvania appeals the District Court's grant of Jay

Boyer, Jr.'s habeas petition on the ground that his trial counsel was ineffective for failing

to argue for suppression of Boyer's confession because his interrogation violated the

requirements of Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny. For the

reasons that follow, we will affirm.

I.

Boyer was arrested in December of 2001 in connection with an October 2001

home-invasion robbery in Northumberland County during which three perpetrators – one

carrying a gun – assaulted two homeowners and stole a safe containing their coin

collection. When Boyer was taken to the police station for questioning, one officer,

Trooper Reeves, read him a warning pursuant to Miranda. Boyer responded, "I don't

want to talk to you." Trooper Reeves then left the interrogation room and told another

officer, Trooper Watson, that Boyer would not speak to him. (Appendix ("App.") 40;

46).[1] Trooper Watson offered to try to interrogate Boyer, walked into the interrogation

room and, without administering renewed Miranda warnings, began interrogating Boyer.

During this interrogation, Boyer allegedly confessed to the robbery as well as to a

different crime in another Pennsylvania county, Union County. The police did not record

---

[1] Boyer claims that "Trooper Reeves never even told Trooper Watson that Mr. Boyer invoked his right to remain silent and also never told him that he did not desire to talk." Boyer Br. 17. The trial transcript contradicts this assertion. Trooper Reeves testified that he "made a comment to Trooper Watson like I read him his Miranda rights, but he's not going to talk to me." App. 40–41. Trooper Watson testified that Trooper Reeves told him that Trooper Reeves "was unable to get anything out of him." App. 46.

the interview or the confession. The interrogation thus gave rise to two separate criminal prosecutions; only the Northumberland County prosecution is before us.

Boyer was charged in an Information with robbery and related counts in the Northumberland County Court of Common Pleas. Boyer's trial counsel sought to suppress the confession through an omnibus pre-trial motion on the ground that the confession was involuntary, but he neither submitted a brief arguing that the interrogation violated Miranda, nor did he make any Miranda-based arguments at the suppression hearing. The trial court denied the omnibus motion. In addressing Boyer's involuntariness argument, the court reasoned, "[t]he uncontradicted testimony of the arresting officer was that the Defendant was read his Miranda warnings. Therefore, this Court determines that Defendant's Fifth Amendment privilege against self-incrimination was not violated." Commonwealth v. Boyer, No. CR-02-141, at 1 n.1 (Northumberland Ct. Common Pleas May 28, 2002).

The prosecution thus introduced Boyer's confession at trial, along with the testimony of Brian Shiffer, a co-defendant, who said he was only in the house for a short period and did not see the victims at all. (App. 133–34). Shiffer also admitted that he had lied about his identity to the police when he was initially arrested. (App. 173–74). None of the victims identified Boyer as the perpetrator.

Boyer was convicted of all counts, and on September 3, 2003, he was sentenced to 19–55 years in a state correctional facility. Boyer unsuccessfully appealed this conviction through his trial counsel. The Pennsylvania Superior Court affirmed the trial

3

court's denial of the suppression motion, and, like the trial court, it considered whether the troopers had complied with Miranda's commands:

> Trooper Reeves read Appellant his Miranda rights prior to questioning; however, Appellant, who disliked Trooper Reeves because of a prior encounter, refused to speak with him.
>
> . . .
>
> There is no evidence to suggest that Appellant was not fully apprised of his rights or that he was coerced or intimidated into waiving those rights. Indeed, Appellant exercised those rights when he refused to speak with Trooper Reeves. Although Appellant confessed to Troopers Watson and Davis, he refused to make a written statement, further indication that his will had not been overcome. Moreover, he did not request an attorney during questioning, he was not threatened with incarceration, and he suffered no mental or physical infirmity that would impede his ability to understand the consequences of confessing to participation in a crime.

Commonwealth v. Boyer, No. 1581 MDA 2003, at 4–5 (Pa. Super. Ct., June 9, 2004) (emphasis omitted).

Boyer, represented by new counsel, then filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541, et seq., on the ground that trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984), for failing to litigate the Miranda claim. The court of common pleas reviewing Boyer's PCRA petition[2] found that the Strickland claim was merely another way of arguing that the

---

[2] The Pennsylvania Courts of Common Pleas have original jurisdiction over PCRA petitions. 42 Pa. Cons. Stat. § 9545(a). PCRA dispositions from the Courts of Common Pleas are appealable to the Pennsylvania Superior Courts. See, e.g., Commonwealth v. Bennett, 930 A.2d 1264 (Pa. 2007). We refer herein to the Court of Common Pleas that

4

confession was improperly admitted under <u>Miranda</u>, an issue the Superior Court had already determined on the merits.[3]  The PCRA trial court thus concluded that this issue was not cognizable under the PCRA's previously litigated rule, 42 Pa. Cons. Stat. § 9543(a)(3), which prevents PCRA courts from considering "allegation[s] of error" that have been "previously litigated."  A claim has been "previously litigated" under the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." <u>Id.</u> at § 9544(a)(2).  The PCRA trial court also noted that the <u>Miranda</u> argument would have failed on the merits: "defendant's assertion of his right to not speak with Trooper Reeves was scrupulously honored.  He did not question the defendant any further." <u>Commonwealth v. Boyer</u>, CP-49-CR-2002-141, at 2 n.1 (Northumberland Ct. Common Pleas, April 10, 2006).  The PCRA appellate court agreed that the issue was previously litigated and so not cognizable

heard Boyer's PCRA petition as the "PCRA trial court" and the Pennsylvania Superior Court that considered that petition on appeal as the "PCRA appellate court."

[3] This determination – that a claim of ineffective assistance of counsel based on the failure to raise an underlying claim is the same as the underlying claim – is a state-court determination of state law to which we defer.  See <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"); <u>Commonwealth v. Marshall</u>, 812 A.2d 539, 544 (Pa. 2002) (holding that a claim that counsel was ineffective for failing to seek suppression "constitutes a veiled attempt to relitigate the same suppression issue that he previously raised on his direct appeal"), <u>overruled on other grounds by</u> <u>Commonwealth v. Tharp</u>, 101 A.3d 736 (Pa. 2014).  Moreover, the finding that the previously litigated rule bars a PCRA court from hearing a claim of ineffective assistance of counsel based on a failure to raise a <u>Miranda</u> argument where the highest state appellate court has already found the <u>Miranda</u> claim meritless is consistent with the federal ineffectiveness standard, for counsel cannot be ineffective for failing to raise a meritless argument.  See <u>Ross v. District Att'y of the Cnty. of Allegheny</u>, 672 F.3d 198, 211 n.9 (3d Cir. 2012) ("Counsel cannot be deemed ineffective for failing to raise a meritless claim.") (quotation marks omitted).

5

in the PCRA context.  See Commonwealth v. Boyer, No. 748 MDA 2006, at 14–15 (Pa. Super. Ct., May 10, 2007).

In the Union County case that arose from the same confession, however, the PCRA appellate court held that the interrogation did violate Miranda.  Boyer's Union County conviction was thus vacated and the case was remanded for a new suppression hearing.  See Commonwealth v. Boyer, 962 A.2d 1213, 1219, 1221 (Pa. Super. Ct. 2008).[4]

Boyer's first habeas petition under 28 U.S.C. § 2254 for the Northumberland County robbery was stayed on the ground that he should renew his request for review in the state court in light of the Union County decision, but when he did, the state court refused to revisit the merits of Boyer's Miranda claim.  (App. 14).

The District Court then reopened Boyer's habeas petition and conducted an evidentiary hearing on the ineffective assistance of counsel claim based on the failure to raise the Miranda argument.  During that hearing, Boyer's habeas counsel asked trial counsel why he had failed to argue for suppression under Miranda.  Boyer's trial counsel responded, "I probably did not think of that at the time. . . . This case was, actually I got it during the first year, within the first year of my employment with the county.  And to be honest with you, I didn't probably think of it at that time."  App. 85–86.  When Boyer's habeas counsel asked, "Did you have any strategic reason for not raising a Miranda

_____

[4] Oddly, one judge sat on both the panel finding the interrogation unconstitutional in the Union County case and the panel finding the same interrogation constitutional in the Northumberland County case.  She offered no explanation for her change of heart.

6

violation?" Boyer's trial counsel responded: "I had no strategic reason for doing that." App. 83.

After the hearing, Magistrate Judge Carlson recommended that the District Court grant the petition and order remand to the Northumberland County Court of Common Pleas for a suppression hearing.[5] The District Court reviewed the Miranda claim de novo, rather than affording deference to the state court as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), on the ground that "[t]he Superior Court decision . . . failed to address the merits of this specific Miranda claim, concluding instead that the trial court had found that this issue had been previously litigated." Report and Recommendation ("R&R") at 5. The District Court thus concluded that "Boyer's Northumberland County PCRA was disposed of on procedural grounds, leaving us bereft of any state court findings." Id. at 25. The District Court granted "limited post-conviction relief," directing the state court to consider Boyer's Miranda claim and implicitly vacating the conviction. App. 4.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). The District Court held an evidentiary hearing, and so we review any findings of fact from that hearing for clear error, but we review the District Court's legal conclusions de novo. Morris v. Beard, 633 F.3d 185, 193 (3d Cir. 2011).

---

[5] The District Court adopted the Magistrate Judge's Report and Recommendation. Hereinafter, references to and quotations of findings by the District Court include the Magistrate Judge's findings it adopted.

7

Under AEDPA, a federal court may not grant relief for a claim adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The District Court found that though AEDPA's

> highly deferential standard of review applies in the typical case, this is not a typical case. Indeed, with respect to the specific Miranda issue which lies at the heart of this habeas corpus petition, the only controlling, precedential, substantive assessment of this issue by the state courts is found in the Superior Court opinion in Boyer's companion case, a ruling which found that Boyer was entitled to post-conviction relief on this Miranda claim.

R&R at 19 (citing Commonwealth v. Boyer, 962 A.2d 1213, 1218-19 (Pa. Super. Ct. 2008)). The District Court concluded that the state courts "declined to address the merits of this particular claim" and so "the [Commonwealth] may not avail [itself] of the doubly deferential standard of review that typically accrues to [its] benefit in federal habeas corpus litigation." Id. at 19–20. The Commonwealth does not challenge this standard of review, see Commw. Br. 4; 10–11, but because AEDPA serves as a limit on our authority based on concerns of comity and finality, the strictures of § 2254(d) are not subject to waiver by the Commonwealth. See, e.g., Williams v. Taylor, 529 U.S. 362, 412 (2000) (AEDPA "places a new constraint on the power of a federal habeas court to

8

grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.").

The District Court was incorrect that the Union County case was the only state court decision entitled to deference; indeed, that case was not before the District Court and is not before us. The state trial court in the Northumberland County case considered whether <u>Miranda</u> required suppression, as did the state appellate court on direct review. During PCRA proceedings, the PCRA courts concluded that the ineffective assistance of counsel argument was a mere restatement of the <u>Miranda</u> argument and not cognizable under the PCRA's "previously litigated" rule. That resolution constituted an adjudication on the merits, and the District Court should have reviewed it according to § 2254(d)(1). <u>See</u> <u>Boyd</u>, 579 F.3d at 370 (Hardiman, J., dissenting in part) ("When a PCRA court invokes the 'previously litigated' rule, it does so . . . because [the petitioner] has already presented those claims at least once before and received a decision on the merits.").[6]

### III.

Nevertheless, because the state court denial of Boyer's habeas petition was an unreasonable application of clearly established federal law, we will affirm. <u>See</u>, <u>e.g.</u>, <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000).

Under § 2254(d)(1), "clearly established Federal law" is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders

---

[6] Though Judge Hardiman made this observation in a dissent, the conclusion that the PCRA courts' invocation of the previously-litigated rule constitutes a decision on the merits garnered majority support from our Court. <u>See also</u> <u>Boyd</u>, 579 F.3d at 333 (agreeing with Judge Hardiman's conclusion that an invocation of the PCRA's previously-litigated rule is a decision on the merits) (Scirica, J., concurring).

its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). A state court decision constitutes an "unreasonable application of . . . Federal law" if it "identifies the correct governing legal rule from [the United States Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," Williams, 529 U.S. at 407–08.

Our review concerns the argument that trial counsel was ineffective under Strickland for failing to litigate the Miranda claim, which Boyer made before the PCRA court. Because counsel cannot be ineffective for failing to raise a meritless claim, we first consider whether the state courts' conclusion that Boyer's interrogation did not violate Miranda was an unreasonable application of clearly established federal law, and it seems plain that the state court's Miranda conclusion was questionable enough that a Miranda claim would have had a great deal of merit.

The Supreme Court in Miranda established a procedure for custodial interrogation designed to protect a detainee's Fifth Amendment right against self-incrimination. According to that procedure, an individual in custody and subject to interrogation must "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law," and be given the "[o]pportunity to exercise these rights . . . throughout the interrogation." Miranda, 384 U.S. at 479. Though "[a]fter such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement," if instead the individual "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must

10

cease." Id. at 479, 473–74.  As the Supreme Court later explained in Michigan v.

Mosley, 423 U.S. 96 (1975), "the admissibility of statements obtained after the person in

custody has decided to remain silent depends under Miranda on whether his right to cut

off questioning was scrupulously honored." Id. at 104 (emphasis in original).  In Mosley,

the Supreme Court

> identified four factors that help decide whether a suspect's
> right to cease questioning was scrupulously honored:  (1)
> whether a significant amount of time lapsed between the
> suspect's invocation of the right to remain silent and further
> questioning; (2) whether the same officer conducts the
> interrogation where the suspect invokes the right and the
> subsequent interrogation; (3) whether the suspect is given a
> fresh set of Miranda warnings before the subsequent
> interrogation; and (4) whether the subsequent interrogation
> concerns the same crime as the interrogation previously cut
> off by the suspect.

United States v. Lafferty, 503 F.3d 293, 303 (3d Cir. 2007) (citing Mosley, 423 U.S. at

105–06).[7]

The PCRA appellate court considering this interrogation in the Union County case

concluded that "the suppression transcript indicates that, almost immediately after

[Boyer] invoked his right not to speak with [Trooper Reeves] and [Trooper Reeves] left

the room, [Trooper Watson] entered that same room and engaged [Boyer] in the

interview that [Trooper Reeves] had failed to obtain." Commonwealth v. Boyer, 962

---

[7] The right to remain silent has not been scrupulously honored if "the sole purpose for
resuming questioning was to persuade the defendant to abandon his right to remain
silent" on the other.  Vujosevic v. Rafferty, 844 F.2d 1023, 1029 (3d Cir. 1988).  Though
Vujosevic informs our understanding of Mosley, it is not binding on the Pennsylvania
courts for purposes of § 2254(d)(1), which concerns only "Federal Law, as determined by
the Supreme Court of the United States."

A.2d 1213, 1217–18 (Pa. Super. Ct. 2008). That court applied the Pennsylvania law concerning Miranda, which mirrors the Mosley test:

> The question of whether the police have "scrupulously honored" the defendant's right to remain silent focuses on . . . (1) whether the defendant was advised of [the] Miranda rights before both interrogations; (2) whether the officer conducting the first interrogation immediately ceased the questioning when the defendant expressed [the] desire to remain silent; and (3) whether the second interrogation occurred after a significant time lapse, and whether it was conducted in another location by another officer.

Commonwealth v. Russell, 938 A.2d 1082, 1090–91 (Pa. Super. Ct. 2007). The PCRA appellate court in the Union County case observed that Trooper Watson did not administer a second set of Miranda warnings and that the second interrogation occurred immediately after the first in the same location, and so it concluded that the argument that the second interrogation violated Boyer's rights under Miranda had merit, and Boyer's counsel was thus ineffective for failing to try to suppress the confession on this ground. The PCRA appellate court vacated the Union County conviction and judgment of sentence and remanded for further proceedings.[8] This analysis is correct.

The Pennsylvania courts found in the Northumberland County case, and the Commonwealth argues here, that Boyer waived his right to remain silent by speaking to Trooper Watson. We determine whether a suspect has implicitly waived his right to remain silent "on the particular facts and circumstances surrounding [each] case, including the background, experience and conduct of the accused." Lafferty, 503 F.3d at 302 (alteration in original) (quotation marks omitted). According to the Pennsylvania

_____

[8] The Union County case was ultimately resolved through a plea agreement.

courts and the Commonwealth, when Boyer said, "I don't want to talk to you," he emphasized "you," meaning he did not wish to speak to Trooper Reeves because "there was a personal issue between Trooper Reeves and [Boyer]." Commw. Br. 5. See also Commonwealth v. Boyer, No. 1581 MDA 2003, at 4–5 (Pa. Super. Ct., June 9, 2004). He then waived his right, the argument goes, by speaking to Trooper Watson. See id.

The conclusion that Boyer emphasized "you" was unreasonable in light of the evidence before the state court, because it lacks any foundation in the record. The interview was not recorded, so there is no direct evidence that Boyer emphasized "you" when he spoke. Moreover, Trooper Reeves's statement to Trooper Watson that Boyer was not interested in speaking to the police suggests that at the time of the interrogation, Trooper Reeves did not believe Boyer's reticence was limited to Trooper Reeves.[9]

The Commonwealth does not elaborate on the nature or source of the alleged conflict between Trooper Reeves and Boyer, except to say that there was a "personal conflict in prior contacts that Boyer had had with the trooper." Commw. Br. at 7. The Commonwealth contends that though Boyer would not speak to Trooper Reeves about the crime, he spoke to Trooper Watson about it, and so he was willing to speak freely about it with others. His confession to Trooper Watson is thus, the Commonwealth contends, the result of a waiver and therefore admissible.

This argument puts the cart before the horse; for a waiver to be knowing and voluntary, it cannot be given under coercive conditions, and so the police must have

---

[9] The PCRA appellate court in the Union County case also rejected the argument that Boyer's statement reflected a personal gripe with Trooper Reeves on the ground that it lacked evidentiary support. See Boyer, 962 A.2d at 1218.

scrupulously honored a suspect's invocation of the right to remain silent. Scrupulous honoring of that right is therefore a threshold to waiver and admissibility. See Mosley, 423 U.S. at 104. Here, interrogation regarding the same crime resumed immediately after Boyer explicitly said, "I don't want to talk to you." App. 39–40. Though a different officer conducted the second interview, Boyer was not given a new set of Miranda warnings, and he was questioned regarding the same crime. The PCRA trial court's observation that Boyer's right not to speak to Trooper Reeves was honored misses the mark. The Fifth Amendment gives Boyer the right to cut off questioning entirely. See Miranda, 384 U.S. at 473–74. It is clear that that right was not scrupulously honored, as Miranda and Mosely require, and it was unreasonable for the Pennsylvania courts to conclude otherwise. Because the police did not scrupulously honor Boyer's invocation of his right, there can be no waiver. See Mosely, 423 U.S. at 104.

There was clearly evidentiary support for the argument that Boyer's Fifth Amendment right to silence was not scrupulously honored, as Miranda and Mosely require, and that there was, therefore, no waiver. See Mosely, 423 U.S. at 104. Having concluded that the determination that the interrogation did not violate Miranda is open to serious question as being an unreasonable application of clearly established federal law, we next consider Boyer's claim that his counsel was ineffective for failing to advance this argument. Boyer raised this argument for the first time before the PCRA court.

It appears that the PCRA courts considered the merits of Boyer's ineffective assistance of counsel claim. The PCRA trial court explained that the standard for ineffective assistance of counsel in Pennsylvania is set forth in Commonwealth v.

14

Thompson, 674 A.2d 217, 219 (Pa. 1996), and the PCRA trial court rejected the claim as previously litigated. Though the PCRA courts did not discuss the merits of the ineffectiveness claim based on the failure to raise the Miranda argument independent of the merits of the Miranda argument itself, in the AEDPA context, we presume the state court has addressed claims on the merits in the absence of any indication to the contrary. See Harrington v. Richter, 562 U.S. 86, 99 (2011).

We thus review the ineffectiveness claim under the deference afforded by § 2254(d)(1). In doing so, we are to "determine what arguments or theories supported or, as here, could have supported, the state court's decision," and we then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Harrington, 562 U.S. at 102.

We next consider whether the Pennsylvania courts in this case unreasonably applied the ineffective assistance of counsel test set forth in Strickland. Under that two-part test, we first look to whether counsel's performance was deficient; that is, did he make "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Strickland, 466 U.S. at 687. We next consider whether that deficiency prejudiced the defendant – whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In assessing deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of

15

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689.

Here, as the District Court correctly noted, Miranda had been in place for several decades at the time of Boyer's trial, and the consequence of obtaining a confession in violation of Miranda – suppression – was also long-established. See, e.g., Mosley, 423 U.S. at 104; United States v. Lafferty, 503 F.3d 293, 299 (3d Cir. 2007). It was thus objectively reasonable to expect defense counsel to be familiar with Miranda and its progeny, and, when an interrogation apparently failed to scrupulously honor the invocation of the right to remain silent, as this one appears to have done, to raise a challenge to the admissibility of the resulting confession. The Commonwealth contends that Boyer's trial counsel did argue for suppression in an omnibus motion, but by his own admission, he did so only on the ground of voluntariness. Counsel did not make a Miranda argument in briefing or during the hearing on the suppression motion.

Though we presume that failing to do so was sound trial strategy, that presumption is overcome here, where counsel himself testified that he had no strategic reason for failing to litigate the Miranda issue. Under these circumstances, it was an unreasonable application of Strickland not to find that counsel's performance was deficient.

We next consider the prejudice prong. As both the Pennsylvania Supreme Court and federal courts have recognized, a defendant's confession is uniquely damaging. See Skilling v. United States, 516 U.S. 358, 383 (2010) ("The defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.")

16

(quotation marks and alternations omitted); see also Commonwealth v. Ardestani, 736 A.2d 552, 557 (Pa. 1999). The confession was likely particularly central to the conviction in this case, where the sole other evidence against Boyer was the testimony of his co-defendant, who had serious credibility issues. These circumstances compel the conclusion that, but for trial counsel's failure to challenge the admissibility of the confession under Miranda, there is a reasonable probability that the outcome of the trial would have been different. Counsel was thus ineffective for failing to argue for suppression under Miranda, and to conclude otherwise is an unreasonable application of Strickland.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court granting habeas, vacating the conviction, and remanding for a new suppression hearing on Boyer's Miranda claim. Like the District Court and the Pennsylvania Superior Court in the Union County case, we note that our ruling here does not constitute a pronouncement about the ultimate validity of Boyer's suppression argument under Miranda; we conclude only that the argument was sufficiently meritorious that it was ineffective for counsel to fail to raise it.

17