J-S16039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YUSEF WASHINGTON, | : | |
| | : | |
| Appellant | : | No. 1012 EDA 2018 |

Appeal from the PCRA Order March 16, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008855-2008

BEFORE: DUBOW, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: Filed: April 30, 2020

Yusef Washington ("Washington") appeals from the Order denying his

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]

We affirm.

In a prior appeal, this Court set forth the relevant history of this case as

follows:

> [On t]he morning of June 7, 2006, there were two rival
> gangs located in the area of 11th and Warnock Streets,
> Philadelphia. [Washington], Braheem Burke [("Burke")] and
> Rachman Jenkins [("Jenkins")] were in one [group], while Eric
> Carter ("Carter") and Keith McClain [("McClain")] belonged to a
> second one. Jenkins and McClain started to argue when Burke
> sucker-punched Carter while Carter was speaking on his cell
> phone with his friend, Niall Saracini [("Saracini")]. A police car
> passed the area, and the two rival groups ceased their fight.
> Carter and McClain then left the area and walked to Carter's home,
> where they told [] Carter's brother, Charles Carter (Carter and

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Charles Carter collectively referred to as "the Carters"), about the incident.

Carter and McClain, accompanied by Charles Carter, then returned to the area of 11ᵗʰ and Warnock Streets. Meanwhile, Saracini, who had been on the cell phone with [Carter] when [Carter] was punched, arrived at the scene in a[ Chevrolet] Impala. The Carters and McClain intended to engage in a fistfight with the opposing [group]. To that end, [] Carter punched Jenkins. In response, [Washington] and Burke each pulled out a gun and began to fire shots at the Carters and Saracini, who were all located near the Impala, and also at McClain, who was fleeing.

Charles Carter was shot in the head and died the following day. Saracini, who also died, was shot in the back of the neck, left shoulder blade, upper right back, and left arm. The wounds in his back were fired from a distance of two to three feet. [] Carter remained unwounded as he hid in the Impala, which was bullet ridden. McClain, who survived, was shot once.

[] Carter testified at trial and stated that no one in his group was armed. While [Carter] refused to identify [Washington] and Burke as the shooters at trial, his preliminary hearing testimony [identifying Washington] and Burke as the perpetrators of the shooting was presented at trial, as was an identical, verbatim statement [that Carter] gave to police immediately following the incident. Philadelphia Detective Michael Walter established that [Washington] fled the jurisdiction after the murders. For several months, the entire Philadelphia [P]olice [D]epartment searched for [Washington] in the Philadelphia area, to no avail. Area newspapers contained articles indicating that [Washington] was a fugitive and asking for assistance in locating him. Almost two years after the crimes, on April 12, 2008, [Washington] was arrested in North Carolina.

Based on this proof, [Washington] was convicted of first-degree murder in connection with the deaths of Charles Carter and [] Saracini[,] … [the] aggravated assault of [] Carter and []

> McClain[,] as well as conspiracy and possession of an instrument of crime....[2, 3]

*Commonwealth v. Washington*, 62 A.3d 462 (Pa. Super. 2012) (unpublished memorandum at 1-3) (footnotes added). The trial court imposed the mandatory sentence of life in prison. This Court subsequently affirmed Washington's judgment of sentence, after which the Pennsylvania Supreme Court denied allowance of appeal. *See id.* (unpublished memorandum at 9), *appeal denied*, 69 A.3d 602 (Pa. 2013).

On April 7, 2014, Washington filed a timely, *pro se*, PCRA Petition. The PCRA court appointed counsel, who filed an Amended PCRA Petition and Supplements to the Amended PCRA Petition. Following the issuance of a Pa.R.Crim.P. 907 Notice to Washington, who filed responses to the Notice, the PCRA court denied the Petition without an evidentiary hearing. Thereafter, Washington filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Washington presents the following claims for our review:

> [1. Whether] Kevin Smith's ("Smith") and Larry Polk's ("Polk") statements and non-identifications of [] Washington either constitute newly-discovered facts or [whether] trial counsel [was ineffective for] fail[ing] to identify, interview, and present their observations and non-identifications at [] Washington's trial[?]

---

[2] *See* 18 Pa.C.S.A. §§ 2502(a), 2702, 903, 901.

[3] In September 2008, a jury convicted Burke of two counts of third-degree murder and possession of an instrument of a crime. *See* 18 Pa.C.S.A. §§ 2502(c), 907.

[2. Whether] [t]rial counsel was ineffective for failing to develop and present photographic evidence to the jury undermining [] Carter's unrecorded interrogation statement[?]

[3. Whether] [t]rial counsel was ineffective for not requesting a *Kloiber*[4] instruction[?]

[4. Whether] [t]he cumulative impact of trial counsel's errors rendered [] Washington's trial fundamentally unfair[?]

[5. Whether] [t]rial counsel was ineffective for misrepresenting the plea negotiations to [] Washington[?]

[6. Whether] [t]he PCRA court erred by not granting an evidentiary hearing[?]

Brief for Appellant at 3 (footnote added).

As our Supreme Court has directed,

[u]pon reviewing an order in a PCRA matter, we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this court applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

---

4 *See Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

Washington first argues that the PCRA court improperly rejected his claim of newly-discovered evidence, which was based upon the eyewitness accounts of the incident by Smith and Polk. Brief for Appellant at 27. According to Washington, Smith and Polk came forward shortly after seeing an "Investigation Notice" posted in the neighborhood in 2016. *Id.* at 28. Both told PCRA counsel that they would have testified at Washington's trial, had they been interviewed and subpoenaed. *Id.* at 28. In this regard, Washington includes a claim of ineffective assistance of trial counsel for not interviewing and subpoenaing Smith and Polk for trial. *Id.*

Washington explains that at trial, Carter and McClain both testified that they had observed Washington at the corner of Warnock and Louden Streets immediately before the shooting. *Id.* at 28. Neither Carson nor McClain saw Washington with a gun or firing a weapon. *Id.* However, the Commonwealth impeached both witnesses with their prior statements and testimony. *Id.* at 28-29. Washington contends that the testimony of Polk and Smith, under this scenario, would have been relevant and exculpatory. *Id.* at 29.

> Under the PCRA,
>
> where a petition is otherwise timely, to prevail on an after-discovered evidence claim for relief under [42 Pa.C.S.A. §] 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 823 (Pa. 2004); *see* [*Commonwealth v.*] *Cox*, 146 A.3d [221,] 227-28 [(Pa. Super. 2016) ([stating that] "[o]nce

jurisdiction has been properly invoked, … the relevant inquiry becomes whether the claim is cognizable under [Section 9543] of the PCRA.").

***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017) (citation omitted).

In its Opinion, the PCRA court addressed Washington's claim and concluded that it lacks merit. **See** PCRA Court Opinion, 3/25/19, at 7. We agree with the sound reasoning of the PCRA court, as set forth in its Opinion, and affirm on this basis with regard to Washington's first claim. **See id.**

We next address Washington's related claim of ineffective assistance of trial counsel. Washington claims that his trial counsel rendered ineffective assistance by not interviewing, and presenting as trial witnesses, Polk and Smith. Brief for Appellant at 38. Washington argues that the Commonwealth's case was dependent upon the credibility of the eyewitnesses. **Id.** at 39. Washington argues in his brief that

> the Commonwealth tasked the jury with deciding between the unrecorded interrogation statements and trial testimony of [] Carter, [] McClain, and Rasheed Ali [("Ali")]. Consequently, the jury had to determine which of t[hem] presented as more credible and believable. The Commonwealth forcefully and repeatedly argued that their unrecorded interrogation statements were more credible and presented the truth.

**Id.** According to Washington, the Commonwealth's intentions were foreseeable, based upon the way in which the testimony proceeded at Burke's trial. **Id.** Washington asserts that trial counsel "had a duty to pursue avenues of investigation that could [ha]ve potentially produced evidence calling into question the credibility and veracity of [the witnesses'] unrecorded

statements." *Id.* at 40. Washington argues that "trial counsel should [ha]ve, at the very least, knocked on several more doors to see if anyone saw anything." *Id.* at 42.

To prove that counsel was ineffective, a petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) he was prejudiced by counsel's act or omission. *Commonwealth v. Cousar*, 154 A.3d 287, 296-97 (Pa. 2017). The failure to prove any prong of this test will defeat an ineffectiveness claim. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

Moreover, to establish ineffectiveness of counsel based on the failure to call a witness, a petitioner must show that (1) the witness existed; (2) the witness was available to testify for the defense at trial; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the petitioner a fair trial. *Commonwealth v. Puksar*, 951 A.2d 267, 277 (Pa. 2008).

In its Opinion, the PCRA court concluded that Washington failed to establish this ineffectiveness claim:

> [A]t no point does [Washington] attempt to prove that these witnesses were available, wanted to come forward and would have been willing to testify. Furthermore, [Washington] does not address whether counsel had a strategic decision in not calling these witnesses, nor does [Washington] address how the calling of these witnesses would have, with reasonable likelihood, changed the outcome of trial. Accordingly, this claim lacks merit.

- 7 -

PCRA Court Opinion, 3/25/19, at 9. Our review of the record confirms the PCRA court's analysis and conclusion. ***See id.***

In addition, we conclude that Washington failed to establish that counsel lacked a reasonable basis for not subpoenaing or interviewing Polk and Smith:

> Mere conclusory allegations, without some proffer as to what counsel would say in response to the allegations[,] are insufficient to establish entitlement to relief. Thus, a supporting document from counsel stating his reasons for the course chosen is generally necessary to establish potential entitlement to a hearing. ***See***, ***e.g.***, Pa.R.Crim.P. 902(A)(12)(b) ([stating that a] PCRA petition shall contain facts supporting each ground for relief; if supporting facts do not appear of record[,] "affidavits, documents and other evidence showing such facts" [should] be identified).

> \*       \*       \*

> … Although [the Supreme] Court has dismissed claims of ineffectiveness where [the] appellant has not provided counsel's affidavit, we have indicated we may overlook the failure where appellant adequately explains why he did not submit it. ***See Commonwealth v. Marshall***, []571 Pa. 289, 812 A.2d 539, 547-48 (Pa. 2002) ([stating that a] significant factor in finding [that] appellant did not establish [that] prior counsel had no reasonable basis for inaction was appellant's failure to provide [an] affidavit, or explanation as to why he was unable to procure [an] affidavit).

***Cousar***, 154 A.3d at 300.

Here, Washington failed to establish that counsel lacked a reasonable basis for inaction or explain why he was unable to procure an affidavit from counsel. ***See id.*** For this reason, and for the reasons set forth in the PCRA court's Opinion, we cannot grant Washington relief on this claim. ***See id.***; ***see also Commonwealth v. Birdsong***, 650 A.2d 26, 32 (Pa. 1994) (stating that to establish ineffective assistance of counsel, the appellant must

- 8 -

demonstrate, not just allege, that counsel had no reasonable basis for his or her conduct).

In his second claim, Washington asserts that his trial counsel rendered ineffective assistance by not developing and presenting photographic evidence to the jury undermining Carter's unrecorded interrogation statement. Brief for Appellant at 50. In support, Washington argues the following:

> At trial, [Carter] testified that he crawled under the Impala when the shooting began[,] and then crawled into the Impala. [Carter] testified, though, [that] he didn't look at the gunmen when he was under the Impala, and even if he had, he would've been unable to see the gunmen because of where and how he was positioned under the Impala. The Commonwealth, however, introduced his [prior] statement where he claimed [that] he had an unobstructed view of the gunmen and he saw [] Washington and [] Burke shooting.

*Id.* According to Washington, counsel should have obtained a 2004 Impala, parked in its exact location at the time of the shooting, crawled under the vehicle, and taken pictures capturing Carter's field of vision. *Id.* at 50-51.

Once again, to support his ineffectiveness claim, Washington baldly asserts that counsel had no reasonable basis for not taking such photographs and presenting them at trial. Washington fails to demonstrate counsel's lack of a reasonable basis beyond bald assertions. Because such claims are not

self-proving, we cannot grant him relief on this claim.[5] *See Cousar*, 154 A.3d at 300; *Birdsong*, 650 A.2d at 32.

In his third claim, Washington argues that trial counsel rendered ineffective assistance by not requesting a *Kloiber* instruction. Brief for Appellant at 61. Washington contends that at trial, Carter, Ali and McClain each testified that they did not see the gunmen at the time of the shooting. *Id.* Washington states that, in response, the Commonwealth presented the three witnesses' prior statements identifying Washington as the gunman. *Id.* According to Washington, he "was entitled to a *Kloiber* instruction informing the jury that it had to view the three in-court identifications with caution because of [the witnesses'] failure and/or refusal to identify Washington during their trial testimony." *Id.* On this basis, Washington argues that his trial counsel rendered ineffective assistance by not requesting a *Kloiber* instruction. *Id.*

"A *Kloiber* charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." *Commonwealth v. Reid*, 99 A.3d 427, 448 (Pa. 2014) (citations omitted).

_____

[5] Even if Washington had established that counsel lacked a reasonable basis for not taking such photographs, we would conclude that the claim lacks arguable merit, for the reasons set forth in the PCRA court's Opinion. *See* PCRA Court Opinion, 3/25/19, at 10-11.

> Our case law makes clear that the need for a **Kloiber** charge focuses on the ability of a witness to identify the defendant. Our Commonwealth's decisional law has long held that prior inconsistent statements based upon fear of endangerment do not equate to a prior failure of ability to identify a defendant.

**Id.** at 449 (citations omitted). "Unlike the typical **Kloiber** situation, where there is a damaging in-court identification of the accused, the same type of concerns are not present where a witness declines to identify the defendant in court." **Commonwealth v. Sanders**, 42 A.3d 325, 335 (Pa. Super. 2012).

As Washington acknowledges in his brief, the three witnesses each testified that they did *not* see the gunmen, "either because they were hiding in or under a car or running away from the shooting …." Brief for Appellant at 61. Because the witnesses provided no in-court identification, a **Kloiber** instruction was not warranted. **See id.** Consequently, there is no arguable merit to Washington's underlying claim and his claim of ineffective assistance of counsel fails. **See Cousar**, 154 A.3d at 296-97; **Fears**, 86 A.3d at 804.

In his fourth claim, Washington argues that cumulative prejudice caused by counsel's errors rendered his trial fundamentally unfair. Brief for Appellant at 64. However, Washington's cumulative prejudice claim is predicated on the prior claims of ineffective assistance of counsel. **See id.** Because we concluded that those claims lack merit, Washington's claim of cumulative prejudice cannot be sustained.

In his fifth claim, Washington claims that trial counsel rendered ineffective assistance by misrepresenting the plea negotiations to Washington.

- 11 -

*Id.* According to Washington, the Commonwealth offered to drop the first-degree murder charges in exchange for Washington tendering a guilty plea to two counts of third-degree murder. *Id.* The Commonwealth further agreed not to seek a sentence of life in prison. *Id.* Washington asserts that he asked trial counsel to make a counteroffer. *Id.* The counteroffer would have required the Commonwealth to join plea counsel in requesting that the two third-degree murder sentences be imposed concurrently. *Id.* According to Washington, counsel represented that the prosecutor checked with her supervisor and rejected the counteroffer. *Id.* at 65-66. However, Washington claims that at an unrecorded sidebar, it became apparent that his counsel never tendered the counteroffer to the Commonwealth. *Id.* at 66. Washington argues that trial counsel's misrepresentation deprived him of the opportunity to consider and accept the original plea offer. *Id.* Washington claims that the PCRA court improperly denied him an evidentiary hearing to develop this claim. *Id.* at 67. Washington directs our attention to the United States Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156 (2012), to support his claim. Brief for Appellant at 67.

In its Opinion, the PCRA court addressed this claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 3/25/19, at 12. We agree with the sound reasoning of the PCRA court and affirm on this basis with regard to Washington's fifth claim. *See id.*

Finally, in his sixth claim, Washington argues that the PCRA court improperly denied his PCRA Petition without an evidentiary hearing. Brief for Appellant at 68. Washington's claim relies upon the allegations raised in his prior issues. *See id.* Because we conclude that his prior claims lack merit, we discern no abuse of discretion by the PCRA court in not conducting an evidentiary hearing. *See* Pa.R.Crim.P. 907(1) (stating that "[i]f the judge is satisfied from … review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, [after giving notice of its intent to dismiss,] the judge thereafter shall order the petition dismissed[.]").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/20

- 13 -

FILED

2019 MAR 25 PM 2: 05

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**

**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA       :       CP-51-CR-0008855-2008

v.       :

YUSEF WASHINGTON, Appellant       :

**OPINION OF THE COURT**

Appellant, Yusef Washington, appeals from this Court's denial of relief pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa. C.S.A. §9541 *et seq*. For the reasons set forth below, this Court's Order denying relief should be affirmed.

From May 3, 2010 through May 13, 2010, Appellant was tried in a jury trial before this Court. At the conclusion of the trial, the jury found Appellant guilty of two counts of First Degree Murder, Aggravated Assault, Conspiracy and related offenses for the June 7, 2006 killings of Charles Carter and Niall Saracini and the wounding of Keith McClain near Warnock and Louden Streets in Philadelphia.

On October 22, 2010, this Court sentenced Appellant to life imprisonment for each murder, and concurrent terms of 10-20 year terms of imprisonment for aggravated assault and conspiracy, and 1-2 years for possessing an instrument of crime. Timely post sentence motions were filed and denied. A timely appeal was filed. On October 22, 2012, the Superior Court affirmed the judgment. On July 2, 2013, the Supreme Court denied *allocatur*.

On April 7, 2014, Appellant timely filed a *pro se* PCRA petition. Current counsel entered his appearance on November 8, 2014. On May 1, 2017, Appellant filed an amended PCRA petition. On January 18, 2018, Appellant filed a supplement to his amended PCRA petition. The Commonwealth filed a Motion to Dismiss. Subsequently, after reviewing the pleadings, the

1

record and the law, and after complying with the procedural requirements of Pa.R.Crim. P. 907, this Court denied the petition as meritless without granting a hearing. The instant timely appeal followed.

The facts as found by the jury as fact finder can be summarized as follows: Police Officer Stanley Davis testified that at approximately 12:35 P.M. on June 7, 2006 while in an unmarked vehicle he heard gunshots and saw pigeons flying. He drove around the corner to 4800 Warnock Street and saw a male lying on the sidewalk suffering from a gunshot wound to his forehead. He also saw a silver Impala pulling away from the scene. Eventually, the officer together with other marked vehicles stopped the Impala. In that car was another gunshot victim who appeared to be shot in the neck. The officer also observed bullet holes in the driver's side of the car. N.T. 5/5/10, 44-59.

Police Sergeant Edward Schikel processed the scene, which was the intersection of Warnock and Louden Streets. He found eight (8) .9 millimeter fired cartridge casings near a cement barrier. In another location he found a cluster of .380 fired cartridge casings. He also collected various projectiles and pieces of projectiles, as well as a baseball cap with what appeared to be a bullet hole and a sample from what appeared to be a blood stain on the pavement. N.T. 5/5/10, 68-114.

Thomas Bunting testified that at the time of the incident he was at 11th and Louden Streets delivering beer to a deli. He saw two groups of males totaling approximately seven (7) people arguing and fighting. One of the males was sucker punched in the face. Eventually the altercation ended. One group went towards Warnock Street and the other group which included the male who sucker punched the other went towards Broad Street. Approximately ten (10) minutes later three men came back from the Broad Street side and were continuing towards

2

Warnock Street. They were dressed differently from the men who previously left going towards Broad Street. About a minute or two later he heard gunfire and called 9-1-1. N.T. 5/5/10, 131-147.

Rasheed Ali, who was incarcerated at the time he testified after being convicted of numerous violent felonies, testified that he was the owner of the Impala and had loaned the car to Niall Saracini earlier that. He further testified that later that day he needed the car back and went to 11th and Louden where the car was parked and heard gunshots. Charles Carter and Niall Saracini were shot. He put Saracini into the Impala and drove towards Einstein Hospital. Before the jury he denied any further involvement in the incident. However in prior sworn testimony given on September 22, 2008 and in a prior verbatim statement given to police on June 7, 2006[1], he stated that when he came upon the scene he saw two people shooting into his car. When they stopped shooting the shooters ran up Warnock Street towards Rockland Street. Mr. Ali ran towards his car and saw the two victims. He tried to put Carter into his car but the victim was bleeding too badly. He was able to get Saracini into the car and drove towards Einstein Hospital. In his police statement Ali identified photographs of Appellant and Appellant's cousin, Braheem Burke as the shooters. N.T. 5/5/10, 161-220; 5/6/10, 5-26.

The medical examiner testified that both victims died from gunshot wounds. Specifically Carter received two gunshot wounds. The fatal wound entered his forehead and exited the back of the head. He also received a shrapnel type injury to the back of his right arm which was consistent with a bullet passing through a car door. Saracini received a gunshot wound through his neck. He also received a gunshot wound to his shoulder blade and another to his back in

---

[1] The jury properly was instructed under what circumstances it may consider evidence of prior testimony and prior verbatim statements as substantive evidence. N.T. 5/12/10, 132-134.

3

which the bullets were recovered. He also had two gunshot wounds through his arms. He died from these multiple gunshot wounds. N.T. 5/6/10, 118-140.

Eric Carter testified that he knew Appellant and his cousin, Braheem Burke, whom he called "Newsy." On the day of the shooting the witness was with his cousin, Keith McClain[2] and a third person named Ty. The witness and his "brothers' were part of a group that congregated at 11th and Louden Streets. Appellant and Newsy were part of a group that congregated on Warnock Street. Shortly before the shooting the groups met and an argument ensued between Keith and one of Appellant's cousins. The witness observed the argument and called Niall Saracini. The witness then became involved in a fistfight with Newsy. Police came to the neighborhood and the fight broke up. The groups separated: Appellant's group went towards Warnock Street and the witness' group went towards 13th Street. The witness' group later went back towards the scene of the eventual shooting and saw Niall Saracini drive up in the Impala. Charles Carter got into the car. The witness kept walking towards Warnock Street and saw Appellant and his group on the corner. As the groups met, the witness punched a member of Appellant's group named Rachman. The witness further testified that shots then rang out and the witness jumped in the car with the two victims. The witness and members of his group were unarmed. In his testimony he gave no further details about the incident. However in prior testimony and in a verbatim statement given to police a few hours after the shooting the witness provided further details. Specifically he stated that his initial encounter with Newsy was that Newsy sucker punched[3] him. He also stated that he saw the shooting and identified both Appellant and Newsy as the shooters. N.T. 5/10/10, 12-79.

_____

[2] The witness was Charles Carter's brother. During his testimony he also referred to the second decedent and to Keith McClain as his brothers also.

[3] Carter used the word "snuck."

4

Keith McClain also testified. He testified that he also received a gunshot wound that Appellant and Newsy were present at the scene of the shooting, but the witness denied seeing who fired the shots. In his verbatim statement given to police and in prior testimony the witness said that Newsy pointing a black revolver. N.T. 5/11/10, 7-75; 117-131 (Testimony of Detective Fetters).

Detective Michael Walter testified to Appellant's flight from the jurisdiction following the murder. A warrant for Appellant's arrest was obtained on June 8, 2006. Over the next few weeks and months police went to various locations looking for Appellant with negative results. Surveillances were conducted with negative results. Wanted posters were prepared and distributed to police throughout the city with negative results. Newspapers ran stories about Appellant being a fugitive and requested the public's assistance in locating Appellant. On April 12, 2008, almost two years after the arrest warrant was obtained and about a month after the last public plea for help published in the Daily News, Appellant was arrested in North Carolina.

Forensic Scientist Gamal Emira examined the clothing taken from the decedent Niall Saracini. He observed two bullet holes in the back shoulder area of a shirt. He was able to determine the presence of gunpowder particles around the holes which indicated that the muzzle of the gun was within two to three feet of the shirt when fired. N.T. 5/10/10, 171-201.

Firearms Examiner Kenneth Lay examined twenty-eight (28) items of ballistic evidence. The fired cartridge casings were from two distinct guns; a .9 millimeter and a .380. The evidence was consistent with the shooters moving either towards or away from a target. Bullets recovered from the car were fired from a .380. Another bullet fragment was recovered which was consistent with being fired from a revolver. Six bullet jackets were recovered which also were consistent with being fired from a revolver.

5

In Appellant's instant petition, Appellant raised six claims for consideration. Appellant's first claim is a claim that after discovered evidence serves as a basis for a new trial. Appellant's next five claims are claims of ineffective assistance of counsel. Appellant's first ineffective assistance of counsel claim is a claim that counsel was ineffective for failure to interview the residents of the 4800 block of Warnock Street. Appellant's second ineffective assistance of counsel claim is a claim that counsel was ineffective for failure to present evidence to the jury undermining Eric Carter's statement. Appellant's third ineffective assistance of counsel claim is a claim that counsel was ineffective for failure to request a *Kloiber* instruction. Appellant's fourth ineffective assistance of counsel claim is a claim for cumulative prejudice. Appellant's final claim for ineffective assistance of counsel is a claim that counsel was ineffective for misrepresenting a plea offer. We will address each claim individually in the order in which they were presented.

Appellant's first claim is a claim involving after-discovered evidence. The after-discovered evidence Appellant alleged warranted a hearing involved statements made by two individuals, Larry Polk and Kevin Smith. The substance of these statements involved the following: Both stated they saw Appellant without a gun immediately before and after the shooting and neither saw him shooting at anyone. Appellant claimed the statements provided by these two individuals, if heard by the jury, would have likely resulted in a different verdict. As a result, Appellant believed these statements should qualify as admissible after-discovered evidence, which should result in at least an evidentiary hearing. However, Appellant is misguided.

In order for after-discovered evidence to be the basis for a new trial, four elements must be met. After discovered evidence must: (1) be discovered after trial and could not have been

obtained any sooner by the exercise of reasonable diligence; (2) not be merely corroborative or cumulative; (3) not be used solely for impeachment purposes; and (4) be of such a nature and character that a different verdict will likely result if a new trial is granted. Commonwealth v. Johnson, 841 A.2d 136, 140-141 (Pa. Super. 2003). Appellant has failed to meet all of the required factors.

In Appellant's instant petition, Appellant makes no reference to being able to meet the first factor. Appellant preemptively assumed they would not be able to meet this standard due to the fact Appellant has not provided any reasoning as to why these statements could not have been obtained before trial. Appellant, instead, indicated that his ineffective assistance of counsel[4] claim for failure to adequately investigate might be the appropriate place for this argument to potentially be discussed. However, that is not an adequate argument to meet the first element of the test set forth in Johnson.

Furthermore, Appellant has failed to meet either the second or fourth factor of the test. Appellant claimed, "Polk's and Smith's observations actually corroborate what Eric and McClain testified to at trial." Petition, 24-25. As such, this would be considered evidence that is merely corroborative or cumulative and not grounds for a new trial. In addition, Appellant does not discuss how this evidence would likely alter the outcome of the trial. Neither of these two individuals stated that Appellant did not or could not shoot the victim, nor was there any explanation given as to why these witnesses have not come forward in the past 11 years. Accordingly, this claim lacks merit.

Appellant's next five claims are claims in which Appellant alleged ineffective assistance of counsel. "Ineffective assistance of counsel is a mixed question of law and fact that we

---

[4] Significantly Appellant does not claim that counsel lacked a reasonable basis for not pursuing the evidence and provides no analysis to demonstrate how, if at all, he may have been prejudiced by not pursuing this information.

7

review *de novo*." United States v. Blaylock, 20 F.3d 1458, 1464–65 (1994). The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 685 (1984), stated, "[t]he Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment including the Counsel Clause." The Supreme Court also stated, "[t]hat a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Id. As a result, the Supreme Court has acknowledged that the right to counsel is the right to effective counsel. Id. at 686. The law presumes that counsel was effective and, therefore Appellant has the burden to show that counsel was ineffective. Commonwealth v. Baker, 614 A.2d 663, 673 (Pa. 1993).

Counsel is presumed effective and Appellant bore the burden of proving that counsel provided ineffective assistance of counsel. Commonwealth v. Rivers. 786 A.2d. 923 (Pa. 2000). The Strickland Court set out a test where a defendant would have to show that (1) his attorney's performance was unreasonable under prevailing professional standards and (2) that there is a reasonable probability that but for counsel's unprofessional errors; the result would have been different. Strickland v. Washington at 687-690. In reviewing the PCRA, the Pennsylvania Supreme Court, in Commonwealth v. Douglas, 645 A.2d 226, 230 (Pa. 1994), stated, "[t]o prevail on such a claim, Appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) that he was prejudiced by counsel's ineffectiveness." To show prejudice

8

Appellant must establish that, but for counsel's errors, the outcome of the trial would have been different. Commonwealth v. Bond, 819 A.2d 33, 42 (Pa. 2002). Appellant's failure to satisfy all the prongs of the test should result in the dismissal of the ineffective counsel claim. Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003).

"Allegations of the deprivation of the right to effective representation of counsel are not self-sustaining. The burden of proof of the allegations remains with the claimant, their accuracy still to be established by his submission of relevant proofs." Com. v. Hentosh, 554 A.2d 20, 24 (Pa. 1989). Without the submission of relevant proofs supporting the claim of ineffectiveness, summary rejection of the claim is warranted. Id. at 25. If a defendant fails to demonstrate that counsel's act or omission had an adverse effect on the outcome of the proceedings, the ineffectiveness claim should be dismissed on that basis alone, and the court need not first determine whether the defendant has satisfied the first and second prongs of the test. Commonwealth v. Albrecht, 720 A.2d 693, 701 (Pa. 1998).

To be entitled to an evidentiary hearing on a claim of ineffectiveness, a defendant must "set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude ... counsel may have, in fact, been ineffective." Commonwealth v. Priovolos, 715 A.2d 420, 422 (Pa. 1998) (quoting Commonwealth v. Pettus, 424 A.2d 1332, 1335 (Pa. 1981)).

Appellant's first ineffective assistance of counsel claim is a claim that counsel was ineffective for not finding Larry Polk and Kevin Smith. "[T]o succeed on a claim of trial counsel's ineffectiveness for failure to call a witness, the appellant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared

9

to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant." Fulton, 830 A.2d at 572.

Appellant has failed to provide evidence in order to meet this standard. At no point does Appellant attempt to prove that these witnesses were available, wanted to come forward and would have been willing to testify. Furthermore, Appellant does not address whether counsel had a strategic decision in not calling these witnesses, nor does Appellant address how the calling of these witnesses would have, with reasonable likelihood, changed the outcome of trial. Accordingly, this claim lacks merit.

Appellant's second ineffective assistance of counsel claim is a claim that counsel was ineffective for not taking a photo from under the car to demonstrate what someone could see from that angle. One of the witnesses who testified at trial, Eric Carter, testified to watching the incident from underneath a Chevrolet Impala. Appellant claimed counsel was ineffective for not renting a 2004 Impala, parking it in the exact location where it was parked during the shooting, crawling under the car, and taking a quality photo to present to the jury while cross examining Eric Carter at trial. Appellant believed this would impeach Eric Carter's statement in which he claimed "that he could see [Appellant] and [co-defendant] shooting while hiding under the Impala." Petition, 32. However, Appellant is misguided.

Appellant provided a photo in his instant petition depicting, what he believed to be, the viewpoint Eric Carter had during the shooting. However, Appellant has not provided any evidence the photograph provided accurately represents the viewpoint of the witness during the shooting. Instead, Appellant has used a viewpoint that is favorable for Appellant's argument without confirming it to be accurate. As such, this photograph provided by Appellant is extremely speculative, as would any photograph taken by an investigator hired by counsel.

10

Therefore, Appellant is asking for inadmissible, speculative evidence to be used as grounds for a new trial. Trial counsel cannot be found ineffective for not presenting inadmissible evidence. Commonwealth v. Harris, 703 A.2d 441, 450 (Pa. 1997). Accordingly, this claim lacks merit.

Appellant's third ineffective assistance of counsel claim is a claim that counsel was ineffective for not requesting an instruction pursuant to Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954) regarding three witnesses' identification testimony. A Kloiber charge instructs the jury that an eyewitness' identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." Commonwealth v. Jones, 954 A.2d 1194, 1198 (Pa. Super. 2008). Appellant cites Commonwealth v. Sanders, 42 A.3d 325, 334 (Pa. Super. 2012), which states, "It is settled that in-court identification evidence must be received with caution if the witness in his testimony or at prior times was not positive as to the identity of the defendant." Petition, 36. However, Appellant is misguided in its application to his case.

Kloiber instructions are to be given when a jury needs to be alerted to the fact that "a witness might be physically incapable of making a reliable observation." Commonwealth v. Collins, 70 A.3d 1245, 1255 (Pa. Super. 2013). Appellant is using the witnesses' refusal to cooperate in court as if it is the same as a physical ability to observe, which it unequivocally is not. Appellant has not met any of the three factors that would trigger a Kloiber instruction. Accordingly, this claim lacks merit.

Appellant's fourth ineffective assistance of counsel claim is a claim of cumulative error. Appellant is combining the prior three ineffective assistance of counsel claims in order to make the claim of cumulative error. However, the Pennsylvania Supreme Court stated, "this Court has

11

repeatedly held, no number of failed claims may collectively warrant relief if they fail to do so individually." Commonwealth v. Williams, 896, A.2d 523, 548 (Pa. 2006). Therefore, as indicated above, since the three prior ineffective assistance of counsel claims lack merit, Appellant cannot successfully bring a cumulative error claim. Accordingly, this claim lacks merit.

Appellant's fifth ineffective assistance of counsel claim is a claim that counsel was ineffective for misrepresenting a plea offer. Appellant claimed counsel told him that he would check with the prosecution about a counter-offer to a plea offer, yet testimony indicated counsel told the prosecution a counter-offer would not be worth pursuing with a supervisor. Appellant claimed this is evidence that counsel misrepresented the plea negotiations; therefore, a new trial or an evidentiary hearing is warranted. However, Appellant is misguided.

In an effort to prove his claim, Appellant cites Lafler v. Cooper, 566 U.S. 156, 163 (2012), which states:

> "Appellant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in the light of intervening circumstances, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and the sentence that in fact were imposed."

However, Appellant does not offer evidence in order to prove the requirements set forth in Lafler. Appellant does not present an offer of proof that would demonstrate the Commonwealth's willingness to change its offer. When it comes to getting an evidentiary hearing through the PCRA, it is Appellant's job to support his claims with specificity and to support those claims with proffers of evidence. Commonwealth v. Miner, 44 A.3d 684 (Pa. Super. 2012). Accordingly, this claim lacks merit.

12

For the reasons set forth above, the Order denying PCRA relief should be affirmed.


BY THE COURT:

_____
ROBINS NEW, J.

13